342 So.2d 737 (1977)
Laura Mae RIAS, guardian ad litem
v.
Jody HENDERSON.
No. 48914.
Supreme Court of Mississippi.
February 9, 1977.
Barry H. Powell, Jackson, for appellant.
V. Douglas Gunter, Jackson, for appellee.
Before GILLESPIE, ROBERTSON and LEE, JJ.
*738 GILLESPIE, Chief Justice, for the Court:
This is an appeal from a judgment in a paternity suit rendered in the County Court of Hinds County. After trial on the merits, the jury returned a verdict finding Jody Henderson the father of four minor children. An order of filiation and child support was entered by the court below, but the guardian ad litem of the four minor children has appealed that portion of the order restricting their right to child support from their father only until each reaches the age of sixteen years.
The children attack the constitutionality of Mississippi Code Annotated section 93-9-29(2) (1972), which provides for child support for illegitimate children from their father only until such children reach the age of sixteen. The right of legitimate children to support and education is not limited to children under sixteen years of age. The Chancery Court's jurisdiction in this State over legitimate minors in divorce and separate maintenance suits is unrestricted.
The question: Does section 93-9-29(2) violate the equal protection clause of the Fourteenth Amendment, because no such limitation is placed on the right of legitimate children?
It is interesting to note that the act under consideration in section 93-9-7 provides in part: "The father of a child which is or may be born out of lawful matrimony is liable to the same extent as the father of a child born of lawful matrimony ..." In section 93-9-29, in contradiction of section 93-9-7, the statute limits the illegitimates' right to support and education to children under sixteen years of age.
In determining whether a statute is violative of the equal protection clause, the United States Supreme Court has traditionally employed two standards of review. (1) In the general field of social and economic legislation, the Court has developed a low standard of review, commonly known as the rational basis test. Under this test a statute is presumed to be constitutional and will not be set aside as long as it is aimed at a permissible legislative purpose and as long as it is based on some rational justification to achieve the purpose intended. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Williamson v. Lee Optical, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563, (1955). (2) Where, however, legislation seeks to make certain classifications, most notably on the basis of *739 race, these classifications are immediately suspect. The presumption of validity disappears and applying rigid scrutiny, the state is placed under a heavy burden to show a compelling state interest in justifying the classification. Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010, (1967). Strict scrutiny review has also been applied when a statute infringes upon a fundamental right, e.g. Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (right to vote); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to travel).
The practical effect of this two-tier evaluation policy as applied by the United States Supreme Court has been a "handsoff" attitude by the courts regarding legislation which does not affect a suspect class or fundamental right in some manner. However, those statutes which do have been invalidated. Since so few decisions have deviated from these general observations, e.g. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957) (economic regulation-rational basis test), overruled by City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Korematsu v. U.S., 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (classification based on race  compelling state interest test), the essential inquiry in equal protection cases has revolved around the determination of whether the legislation affects a suspect class or fundamental right.
Recently the United States Supreme Court has taken a new approach. The Court appears to be developing a hybrid standard of review. See Rehnquist's dissent in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 181, 92 S.Ct. 1400, 1409, 31 L.Ed.2d 768, 782 (1972). The development of this new standard for review has been particularly apparent in the Court's evaluation of statutes and regulations that give rights to legitimate children but deny or modify those rights to illegitimates. The Court stopped short of holding that illegitimates are to be treated as a suspect class, but has evaluated statutes dealing with illegitimates under a higher standard of review than that called for under the rational basis test. The Court, in Weber, supra, gave this test:
What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger? 406 U.S. at 173, 92 S.Ct. at 1405, 31 L.Ed.2d at 777.
In Weber, the United States Supreme Court held that illegitimate dependent children may not be excluded from sharing equally with dependent legitimate children in the recovery of workmen's compensation benefits from the death of their parent. The Court stated:
The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual  as well as an unjust  way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where  as in this case  the classification is justified by no legitimate state interest, compelling or otherwise. 406 U.S. at 175-176, 92 S.Ct. at 1406-07, 31 L.Ed.2d at 779.
In reaching this decision the Court relied upon two earlier decisions: Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), and Glona v. American Guaranty & Liability Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968). In Levy, the Court held that a state statute barring an illegitimate child from recovering for the wrongful death of its mother when such recoveries by legitimate children were authorized was invalid as a denial of equal protection. In Glona, the Supreme Court held that because there was "no possible *740 rational basis" for assuming illegitimacy would be promoted if the mother is allowed to recover in a wrongful death action of her illegitimate child, a statute prohibiting such action was unconstitutional as a violation of equal protection.
In Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), the United States Supreme Court was confronted with a factual situation similar to the instant case. Texas provided a judicially enforceable right of support for legitimate children. However, illegitimate children had no such right of support from their father. The Court, citing Levy and Weber, stated:
Under these decisions, a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a State to do so is "illogical and unjust." [Weber v. Aetna Casualty & Surety Co., supra, at 175, 92 S.Ct. at 1406, 31 L.Ed.2d 768]. We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination. (Cites omitted). 409 U.S. at 538, 93 S.Ct. at 875, 35 L.Ed.2d at 60.
The right to support that a legitimate child has in this State from his father is not limited to the age of sixteen. Indeed in Pass v. Pass, 238 Miss. 449, 118 So.2d 769 (1960), this Court held that a worthy child was entitled to a college education if the father was able to afford it. In Pass, the Court recognized the value of a college education by stating:
But we are living today in an age of keen competition, and if the children of today who are to be the citizens of tomorrow are to take their rightful place in a complex order of society and government, and discharge the duties of citizenship as well as meet with success the responsibilities developing upon them in their relations with their fellow man, the church, the state and nation, it must be recognized that their parents owe them the duty to the extent of their financial capacity to provide for them the training and education which will be of such benefit to them in the discharge of the responsibilities of citizenship. It is a duty which the parent not only owes to his child, but to the state as well, since the stability of our government must depend upon a well-equipped, a well-trained, and welleducated citizenship. 238 Miss. at 458, 118 So.2d at 773.
The right to a college education under appropriate circumstances is a substantial benefit which is denied illegitimate children under the statute in question.
Applying the foregoing authorities to this case, we find no constitutionally legitimate reason for limiting the right of support to illegitimates to the age of sixteen. Perhaps the legislature had a rational basis in enacting this legislation based on the recognition that our jury system is not infallible, but such justification has been held by the United States Supreme Court in Gomez, supra, to be insufficient.
It should be noted that while the present standard of review as applied by the United States Supreme Court in the area of illegitimacy is somewhat less than clear, See Rehnquist's dissent in Jimenez v. Weinberger, 417 U.S. 628, 638, 94 S.Ct. 2496, 2502, 41 L.Ed.2d 363, 371 (1974); Rehnquist's dissent in Weber, supra, the Supreme Court has held in Labine v. Vinson, 401 U.S. 532, 536, 91 S.Ct. 1017, 1019, 28 L.Ed.2d 288, 292 (1971), that its decision in "Levy [et al] did not say and cannot be fairly read to say that a State can never treat an illegitimate child differently from legitimate offspring."
In Labine, the Supreme Court held that a state's intestate statutory scheme which denied an acknowledged illegitimate child from sharing equally in the father's estate with legitimate heirs was not a denial of *741 equal protection. The Court, in Labine, declined to review the case under the traditional standards of review or under its new standard of review, but stated in a footnote:
Even if we were to apply the "rational basis" test to the Louisiana intestate succession statute, that statute clearly has a rational basis in view of Louisiana's interest in promoting family life and of directing the disposition of property left within the State. 401 U.S. at 536, n. 6, 91 S.Ct. at 1019, n. 6, 28 L.Ed.2d at 292, n. 6.
The Court, in Weber, more fully explained its decision in Labine, by stating:
That decision [Labine] reflected, in major part, the traditional deference to a State's prerogative to regulate the disposition at death of property within its borders. [Cites omitted]. The Court has long afforded broad scope to state discretion in this area. [The State has a] . . substantial state interest in providing for "the stability of ... land titles and in the prompt and definitive determination of the valid ownership of property left by descendants,"... . [cites omitted]. 409 U.S. at 170, 92 S.Ct. at 1404, 31 L.Ed.2d at 776.
Mississippi has a profound and constitutionally sound reason for classifying legitimates differently from illegitimates in the laws of descent and distribution of property of a person who dies intestate. Some of these reasons are mentioned in Labine and Weber. Our decision in the present case does not weaken the authority of this State to provide for exclusion of illegitimates from inheriting property from intestate natural fathers.
The judgment appealed from is reversed in part in that it is modified so as to eliminate the restrictive clause "until each child reaches the age of sixteen years."
REVERSED IN PART AND RENDERED.
PATTERSON, P.J., and SMITH, ROBERTSON, WALKER and LEE, JJ., concur.
SUGG, J., INZER, P.J., and BROOM, J., dissent.
SUGG, Justice, dissenting:
Although Mississippi Code Annotated section 93-9-29 (1972) limits the liability of a father of an illegitimate for support and education until the child is sixteen years old as distinguished from the liability of a father for the support and education of his legitimate children until they are twenty-one years old, the difference of five years does not, in my opinion, violate the equal protection clause of the United States Constitution.
The equal protection clause states a complex and difficult principle. Certain classifications are "inherently suspect" which means that any reliance upon them in differentiating legal rights requires very strong affirmative justification. Assuming that this case involves a classification that is inherently suspect, the right of an illegitimate to support by his father for five years less than the right of a legitimate to support by his father, is affirmatively justified. There are differences in the social rights of a father of an illegitimate arising by virtue of their relationship which are recognized in our society, and also a difference in the legal rights of a father of an illegitimate as contrasted to the social and legal rights of the father of a legitimate child. The legislature was justified in considering these differences in limiting the time of an illegitimate's right to support and education from his father. Some of the differences are:
1. A father and his illegitimate child are not usually residents of the same household resulting in the father having no custody and control over an illegitimate. There is ordinarily very little, if any, social relation between the two.
2. Unless the father of an illegitimate files a petition to legitimate his illegitimate child under Mississippi Code Annotated section 93-17-1 (1972), he has no right to bring an action for the custody and control of the child.
3. The mother of an illegitimate has the right to custody as against the father. Aycock v. Hampton, 84 Miss. 204, 36 So. *742 245, 65 L.R.A. 689, 105 American State Reports 424 (1904).
4. Under our wrongful death statute, the father may not bring an action based on the death of an illegitimate. Mississippi Code Annotated section 11-7-13 (1972).
5. The father of a legitimate child has the right to the earnings of his minor child. We have never held this right applies to the earnings of illegitimate children.
6. An illegitimate may bring an action to establish paternity and for support from its father. Mississippi Code Annotated section 93-9-9 (1972). Legitimates may not bring an action against their father for support.
These differences between the rights of a father of illegitimate and legitimate children constitute affirmative justification for the difference in treatment accorded illegitimates under the statute in question. I am of the opinion that the legislature did, and had the right to, take into consideration these differences and was therefore justified in cutting off the right of support of an illegitimate by his father at the age of sixteen.
The legislature also had the right to consider the possibility that, despite all safeguards surrounding a paternity hearing, a man adjudged to be the father of an illegitimate may not, in fact, be the father.
Our case does not fall under the condemnation of Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), involving the laws of Texas which require the father of legitimate children to support his children but deny illegitimates the right of support from their father. Our legislature has faced this question and has provided for support of illegitimates. The limitation contained in our statute is justified by real differences that exist in the relationship between a father of legitimate children and illegitimate children.
It should be noted that our statutes provide for legitimation of offspring and for inheritance by illegitimates. Mississippi Code Annotated section 93-17-1 and 91-1-15 (1972). This case does not involve a child who has been legitimized but is a judgment in a paternity suit declaring Jody Henderson to be the father of four illegitimates and ordering him to support them. They were not made legitimate by virtue of the judgment rendered. I therefore dissent.
INZER, P.J., and BROOM, J., join in this opinion.