Albert A. JONES, a minor child; Bridget Jones, a minor child, by their mother and next friend, Albertine Jones; Barbara L. Jones, Appellants,

v.

Margaret H. HECKLER, Secretary, Department of Health and Human Services, Appellee.

Marcia SIMMS, a minor by her next friend, Sheila Simms, Appellant,

v.

Margaret H. HECKLER, Secretary, Department of Health and Human Services, Appellee.

Nos. 81–1080, 81–1132.

United States Court of Appeals, Fourth Circuit.

Submitted June 15, 1983.

Decided July 14, 1983.

Rehearing and Rehearing En Banc, Denied Sept. 9, 1983.

---

&#8660;137

Dennis W. Carroll, Baltimore, Md. (Eileen Franch, Administrative Law Center, Legal Aid Bureau, Inc., Baltimore, Md., on brief), for appellants.

Stanley Ericsson, Dept. of Health and Human Services, Baltimore, Md. (Thomas S. Martin, Acting Asst. Atty. Gen., Russell T. Baker, Jr., U.S. Atty., Baltimore, Md., Randolph W. Gaines, Chief of Litigation, Washington, D.C., on brief), for appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and BRYAN, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

In *Jones v. Schweiker,* 668 F.2d 755 (4th Cir.1981), *vacated sub nomine Jones v. Heckler,* —— U.S. ——, 103 S.Ct. 1763, 76 L.Ed.2d 339 (1983), we had for decision the question of whether a child whose parents were not married would, under the provisions of 42 U.S.C. § 416(h)(2)(A), qualify as a dependent entitled to certain social security benefits. The statute establishes that one is qualified if, for the purposes of taking in intestacy, he would be entitled to share according to "such law as would be applied in determining the devolution of intestate personal property by the courts of the State . . . in which he [the wage earner parent] was domiciled at the time of his death. . . ."

The case concerned children of deceased fathers who were residents of West Virginia (Simms) and of Mississippi (Jones). The intestacy statutes provided unequal treatment as between those children deemed "legitimate" and those deemed "illegitimate," the disadvantage being borne, as one might expect, given the historical background, by the latter. The Jones and Simms children, under the language of the state statutes were excluded from rights to take in intestacy which they would have enjoyed had they satisfied the statutory requirement of "legitimacy."

As of the time of our decision we were unaware of any decision ruling on the constitutionality of the two statutes. Nevertheless, we proceeded on the assumption that, in light of the decision in *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the West Virginia and Mississippi statutes were each unconstitutional because of the denial of the equal protection mandated by the Fourteenth Amendment to the Federal Constitution.

We decided that unconstitutionality because of a provision of the federal basic law would not convert a state statute into one actually providing the opposite of what its language required, in order to eliminate the unconstitutional inequality. We reached that result on the theory that 42 U.S.C. § 416(h)(2)(A) was intended to allow any-

one *determined by the legislature*[1] to be entitled to inherit under the state's intestacy laws to qualify for social security benefits, assuming, as is the case for the Simms and Jones children, that all other requirements are met.

The social security act, in various provisions contained in 42 U.S.C. § 416, has qualified a child whose parents were not married if (a) the marriage of the parents had taken place but was inadvertently invalid, (b) the parent had acknowledged parental status in writing, (c) there had been a support order or paternity decree, (d) the parent had contributed to the child's support, or (e) the parent and child had had common residence in the same household. Regrettably the Simms and Jones children met none of those qualifying criteria under the social security act, nor, in our view, did 42 U.S.C. § 416(h)(2)(A) come to their assistance. A federally compelled result, based on a determination that the purpose unequivocally set forth by the state's legislative enactments should not, because unconstitutional, be permitted to take effect, would not reverse that legislatively stated purpose to the point of having the state law read to declare the very opposite of what it unambiguously expressed. The mandates emanating from the Federal Constitution would not amount to "such law as would be applied in determining the devolution of intestate personal property . . . [emanating from] the courts of the State."

The Supreme Court has vacated our decision and directed reconsideration in the light of subsequent authorities, one from West Virginia and one from Mississippi. As for West Virginia, the subsequent authority which we have been directed to consider, *Adkins v. McEldowney,* 280 S.E.2d 231 (W.Va.1981), affords a straightforward and controlling reason why the Simms child should be deemed qualified for social security benefits. In *Adkins,* the unconstitutionality of the intestacy statute was adjudicated, not only, or even principally, under the Federal Constitution. Rather the West Virginia Supreme Court of Appeals focused on, and found unconstitutionality under, Article III, Section 17 of the West Virginia Constitution. Of controlling importance is the following language in the *Adkins* opinion:

> In *Peters,* [*v. Narick,* W.Va., 270 S.E.2d 760 (1980)] we had an unconstitutional separate maintenance statute that evidenced a legislative intent to give rights to certain people—intent that was constitutionally too narrowly implemented. Rather than invalidate that beneficial statute, we applied the doctrine of neutral extension, *Id.,* at 270 S.E.2d 767. Code, 42–1–5 exhibits a legislative intent to permit illegitimate children to inherit, but it is too narrowly drawn. Those reasons that justify neutral extension in *Peters* apply here; Code, 42–1–5 must be applied to permit illegitimate children to inherit from both father and mother.

280 S.E.2d at 233.

Turning to *Peters,* we think it manifest that neutral extension involves a determination that, for purposes of ascertaining legislative intent, the legislature has opted for an interpretation of the statute that extends the right to an intestate share to children deemed illegitimate, rather than strike down the inheritance rights of children whose parents lived in holy wedlock.

> Clearly the legislative purpose embodied in the separate maintenance statute is to provide financial help to the dependent spouse and thereby preserve the economic status of the marriage pending further developments. This purpose would be thwarted by an invalidation of the statute, but by extending the statute's benefits to men we conclude the legislative purpose would be effectuated.

270 S.E.2d at 767.

Hence, with the decision in *Adkins v. McEldowney,* Simms, whose rights derive from West Virginia law, clearly has met the requirements of 42 U.S.C. § 416(h)(2)(A). For Mississippi, unfortunately, things are not so straightforward. The authority we have been asked by the United States Su-

---

1. Or, theoretically, by the common law of the state.

preme Court to consider is an amendment, effective from and after July 1, 1981, to § 91–1–15 of the Mississippi Code, Trust and Estates Title, Descent and Distribution Chapter. The provisions therein contained for inheritance from an unwed parent are as follows:

An illegitimate shall inherit from and through the illegitimate's mother.... An illegitimate shall inherit from and through the illegitimate's natural father ... if:

(a) The natural parents participated in a marriage ceremony before the birth of the child, even though the marriage was subsequently declared null and void or dissolved by a court; or

(b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or

(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91–1–27 and 91–1–29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child.

Miss.Code § 91–1–15.

The child of married parents, or even of an unwed mother (§ 91–1–15, *supra*), is not required, in order to inherit, to meet one of those three conditions. Miss.Code §§ 91–1–3, 91–1–11.

First, there arises the question of whether the recently enacted statute could be complied with by the Jones children, bringing them in that way into the ambit of 42 U.S.C. § 416(h)(2)(A). No adjudication of paternity was sought or obtained before the father's death. None has yet been institut-

ed. If it were, one year after the death of the father in 1975 has now long since elapsed.[2] While the recent Mississippi statute permits a pre-July 1, 1981 claim to be brought until June 30, 1984, it is a claim "concerning the estate," *i.e.*, one seeking to establish a right to inherit, not a paternity establishment action to which reference appears to have been made. At least unless and until a suit is commenced which achieves identification of the Jones children as persons entitled to share in intestacy, we do not see how a direct reliance on § 91–1–15 can achieve a result favorable for them under the social security act.

There remains for consideration the possibility that the constitutional infirmity springing from the denial of equal protection heretofore assumed, and apparently not cured by the 1981 amendment to the statute, might, by a Mississippi court, be determined:

A. Also to constitute a violation of one or more provisions of the Mississippi Constitution, and

B. To cause to arise for application, under Mississippi law, the doctrine of neutral extension.

The Mississippi law, in its present state, gives little basis for us, a court from another jurisdiction, to make an initial decision as to what a Mississippi court would do, if confronted with the issue. The Mississippi Constitution in Article 3, Section 14 of its Bill of Rights does guarantee due process of law. No equal protection guarantee is explicitly spelled out. Whether the approach of *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) would be adopted is problematic.

In *Rias v. Henderson,* 342 So.2d 737 (Miss. 1977), the court struck down, *as violative of the Federal Constitution,* a law restricting support for a child of an unwed father to age 16, although for other children the obligation to provide support was not so restricted, and, in appropriate circumstances,

---

**2.** If *Pickett v. Brown,* —— U.S. ——, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983) nullifies the effectiveness of the limitations provisions of the Mississippi statute, it does so on federal constitutional grounds, not on grounds of state law determining the devolution of intestate personal property.

such as those of a child who was a college student where the father could afford the expense, might continue beyond the attainment of majority. No suggestion is made that the Mississippi constitution also would interdict unequal treatment, depending on whether or not the child's parents were married.[3]

In *Estate of Miller v. Miller,* 409 So.2d 715, 717–18 (Miss.1982), the Supreme Court of Mississippi declined on pleading grounds to uphold an adjudication of unconstitutionality of the law of intestate succession because children whose parents were married were treated more favorably than children of unwed parents. The point to observe is that only federal grounds appear to have been relied on in the lower court adjudication of unconstitutionality. While that does not positively foreclose the existence of neutral extension applicable under Mississippi law in such circumstances as those with which we are here confronted, it does nothing to encourage one to believe that a Mississippi court would apply the concept.

It should, nevertheless, be observed that Miss.Code § 1–3–77 spells out that unconstitutionality of any section, paragraph, sentence, clause, phrase or any part of any act shall not affect remaining sections, paragraphs, sentences, clauses, phrases or parts, which shall remain in full force and effect. The Mississippi courts might, consequently, read Miss.Code § 91–1–3 and § 91–1–11 as creating no distinction, insofar as use of the word "children" is concerned, between children of wed and children of unwed parents.

Under the circumstances, we are without confidence that we could accurately ascertain the Mississippi rule, *i.e.,* with any reliability determine whether constitutionality *vel non* would be determined solely in Federal terms, or whether the doctrine of neutral extension or some similar approach would be used to develop a state law concept of equality of treatment between "legitimates" and "illegitimates."

Accordingly, we resort to Rule 46 of the Mississippi Supreme Court, permitting us to certify a question of Mississippi law.

The question we submit is as follows:

Accepting that there is such differentiation as between legitimate children on the one hand and illegitimate children on the other hand in the applicable Mississippi statutory provisions governing rights of inheritance (compare Miss.Code § 91–1–15 of Trusts and Estates Title, Descent and Distribution Chapter with § 91–1–3 and § 91–1–11), as to render the less favorable treatment of illegitimate children unconstitutional and void, does the law of the State of Mississippi call for interpretation of the Mississippi statutes governing descent and distribution or common law to apply and extend to illegitimate children the benefits available to legitimate children, or would Mississippi achieve that result only by virtue of Federal constitutional imperative?

Accordingly, in the Simms case, we remand with instructions to the district court to enter a judgment consistent with this opinion. The Jones case is held in abeyance pending a response by the Supreme Court of Mississippi to the question we have certified.

ALBERT V. BRYAN, Senior Circuit Judge, dissenting:

By its April 18, 1983 order of vacation and remand, the Supreme Court has emphatically adjudged as erroneous this

---

**3.** To make *Rias* even more unsatisfactory for one hoping to apply the doctrine of neutral extension in the case of unequally treated children of an unwed father, the Court sought by *dictum* to justify and uphold as constitutional differing treatment for purposes of fixing intestacy rights, through denial to children of an unwed father of the right to inherit:

Mississippi has a profound and constitutionally sound reason for classifying legitimates differently from illegitimates in the laws of descent and distribution of property of a person who dies intestate. Some of these reasons are mentioned in *Labine* [*v. Vincent,* 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971)] and *Weber* [*v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972)]. Our decision in the present case does not weaken the authority of this State to provide for exclusion of illegitimates from inheriting property from intestate natural fathers.

342 So.2d at 741.

Court's first opinion which affirmed, with me in dissent, the order of the District Court upholding the intestacy inheritance statutes of Mississippi and West Virginia. Additionally, in my mind, the remand explicitly pointed us to the sources for resolution of the issues presently before us. These include the statute of Mississippi and the decision of the Supreme Court of Appeals of West Virginia in *Adkins v. McEldowney,* 280 S.E.2d 231 (W.Va.1981). With these directions the *Jarndyce and Jarndyce* litigation now before us may be "squeezed dry," as Dickens put it, and the unfairly treated illegitimate children in suit will enjoy the benefits of Social Security provided for them by Congress.

I

The Mississippi statute in pertinent part, as amended in 1981, is set forth in the majority opinion of this Court and reads as follows:

An illegitimate shall inherit from and through the illegitimate's mother.... An illegitimate shall inherit from and through the illegitimate's natural father ... if:

(a) The Natural parents participated in a marriage ceremony before the birth of the child, even though the marriage was subsequently declared null and void or dissolved by a court; or

(b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or

(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91–1–27 and 91–1–29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child.

Miss.Code § 91–1–15 (Cum.Supp.1982).

With sincere deference to my brothers, I must disagree with the majority's *sua sponte* determination to ask the Mississippi Supreme Court to interpret this statute, for I discern no lack of clarity in its directions. To me, this enactment violates the Equal Protection Clause of the Fourteenth Amendment. *Trimble v. Gordon,* 430 U.S. 762, 766–776, 97 S.Ct. 1459, 1463–1468, 52 L.Ed.2d 31 (1977). On its face, the statute impermissibly exacts obligations of the illegitimate to qualify for inheritance from the father that are not imposed on the legitimate. *Pickett v. Brown,* —— U.S. ——, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983); *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982).

II

The majority opinion in the instant case carefully notes that for West Virginia *Adkins v. McEldowney* cited in the Supreme Court's remand, declares invalid the statute of West Virginia restricting inheritance by an illegitimate child to inheritance from his or her mother. The majority of this Court so concedes and thus agrees that the judgment of the District Court on this point should be reversed.

*In fine,* I suggest that disposition of this appeal be by way of a condensed per curiam.