RANDOLPH, Presiding Justice,
for the Court:
¶ 1. Before the Court is an appeal of a motion for contempt and modification of alimony and child support first filed by Mari Lynn Hays,[1] and later amended to include Mari Lynn in her capacity as conservator for Lon Frederick Alexander, II (“Rick”), seeking unpaid alimony and child-support payments and additional financial support from her former husband, Lon Frederick Alexander (“Lon”), for the couple’s adult son, Rick. Mari Lynn claims that the chancery court erred by failing to: *705 (1) require Lon to pay additional alimony and/or child support after Rick had reached the age of majority; or (2) require Lon to make payments into a conservator-ship to support Rick after Rick attained the age of majority. We find that the chancery court did not abuse its discretion by declining to require Lon to provide post-majority financial support for Rick, for state law does not vest our Court with the authority to mandate that parents financially support their offspring post-majority. Accordingly, we affirm the judgment of the chancery court.
FACTS AND PROCEDURAL HISTORY
¶ 2. Mari Lynn and Lon were married in 1986, and their only child, Rick, was born in December 1987. On August 2, 2001, Mari Lynn filed a “Complaint for Divorce on Ground of Irreconcilable Differences” in the Hinds County Chancery Court. On October 17, 2002, the chancery court issued a “Judgment of Divorce — Irreconcilable Differences” incorporating Mari Lynn’s and Lon’s “Agreement for Custody and Maintenance of Child and Settlement of Property Rights” (“the agreement”). At that time, Rick was fourteen years old.
¶ 3. The agreement provided that Mari Lynn and Lon would have joint legal custody. Mari Lynn would have primary physical custody. Lon would have weekend visitation. Lon was to pay Mari Lynn $1,500 each month “for the support and maintenance of the minor child” and maintain health insurance covering Rick. (Emphasis added.) The parties were to share equally all reasonable medical expenses. Lon also agreed to pay all of Rick’s private school expenses and college-education expenses through a baccalaureate degree, so long as Rick was actively pursuing a degree and maintaining a 2.50 grade-point average. The agreement further provided that Lon was to pay lump-sum alimony of $100,000 to Mari Lynn in four payments of $25,000, and installment alimony of $9,500 each month for one-hundred-eight months.
¶ 4. On October 26, 2010, Mari Lynn filed a “Motion for Modification, and Motion for Contempt[,]” alleging that Lon was in arrears in alimony, medical, and college-expense payments under the agreement, and seeking additional financial support from Lon due to Rick’s medical conditions. At that time, Rick was less than two months shy of his twenty-third birthday, well past the age of majority. Mari Lynn requested that the chancellor extend Lon’s alimony payments or require him to reinstate child-support payments past the age of majority.
¶ 5. On April 21, 2011, the chancellor held a hearing on Mari Lynn’s modification and contempt claims. At the close of the hearing, the chancellor asked for briefs regarding “why and how I could modify the alimony as well as the child support and what basis I should do it under. And I would like for y’all to get together and submit to me what you think is owed in alimony from both sides. And I will pick a number if y’all can’t agree on something.” Thereafter, Mari Lynn provided that Lon owed $59,000 in past-due alimony, had not paid Rick’s college tuition for the fall of 2010, and had not paid half of Rick’s medical expenses.[2]
¶ 6. On May 31, 2011, the chancellor ordered Lon to pay Rick’s outstanding college expenses, as required by his agreement. On June 15, 2011, the chancellor permitted Mari Lynn, in her capacity as *706 Rick’s conservator, to be added as a party-plaintiff.[3] On June 29, 2011, the court entered an order declining to find Lon in contempt, based on its findings that Lon had paid half of Rick’s medical bills until Rick reached the age of majority, as required by the divorce decree; Lon had reasonably believed that Rick’s delay in returning to college relieved him of his duty to continue paying Rick’s tuition; and Lon had demonstrated an inability to pay an increase in alimony. The chancellor ordered Lon to reimburse Mari Lynn $1,083.15 for his portion of Rick’s college expenses for the fall semester of 2010, which Mari Lynn had paid, and found that Mari Lynn was entitled to a judgment against Lon in the amount of $59,000 for past-due alimony. However, the chancellor declined to require Lon to make child-support payments in futuro for Rick, finding no legal basis for an action, brought by one parent against the other, seeking post-majority support payments.
¶ 7. On July 11, 2011, Mari Lynn filed a motion to amend the motion for modification to reflect her status as Rick’s conservator, and to request — in addition to her requests for continued alimony and child— support payments — that the chancellor require Lon “to provide support directly to [Rick], through his Conservator.... ” On December 9, 2011, the chancellor entered an order, inter alia, addressing Mari Lynn’s amended motion for modification. The chancellor recognized that “[i]n its Order, the Court did not make any reference to the recent appointment of Mari Lynn Hays as Rick’s conservatory” and stated that “[b]ecause the proof that would be offered in support of the Amended Motion is identical to the proof already received by the Court ..., rather than try the issue a second time, for the sake of judicial economy, the Court hereby adopts the evidence at the first trial for the Amended Motion.” The chancery court denied Mari Lynn’s request that Lon be required to support Rick by depositing money into a conservatorship, holding that the court was without legal authority to grant the request.
ISSUES
¶ 8. Mari Lynn raises the following arguments on appeal:
(1) The chancery court erred by failing to modify Lon’s alimony obligation upward.
(2) The chancery court erred by failing to modify Lon’s child-support obligation upward.
(3) The chancery court erred by failing to order Lon to pay monies into a con-servatorship for Rick.
LAW AND ANALYSIS
- ¶ 9. We will reverse a decision of the chancery court in a domestic-relations case where the chancery court applied an erroneous legal standard or reached a manifestly wrong or clearly erroneous decision. Williams v. Williams, 37 So.3d 1171, 1173-74 (Miss.2010).
¶ 10. We find that the chancery court properly denied Mari Lynn’s request that Lon be required to provide support in futuro for Rick after Rick attained majority. The chancellor found as follows, in relevant part:
a modification proceeding is an inappropriate proceeding in which to decide whether a parent has a legal duty to contribute to the support of an adult disabled child. Taylor v. Taylor, .478 So.2d 310, 312 (Miss.1985). Therefore, this Court finds that Plaintiffs Motion for Modification is procedurally improp *707 er with regard to the modification of child support for Rick. Further, this Court would note that it is without statutory authority or jurisdiction to entertain the consideration of continued support for an adult disabled child. It is the Court’s sincere hope that the Mississippi Supreme Court will address this specific issue and give direction to the chancery courts of this state. It is also the Court’s sincere hope that the Mississippi Legislature will address this matter. Until such time, however, this Court is simply without authority ... to grant post-majority support for a disabled adult child.
(Emphasis added.)
¶ 11. We agree with the chancellor that neither a motion for modification nor a motion for contempt was a permissible procedure to consider support for an adult child after the child had attained majority. We specifically have held that a child-support-modification proceeding brought by one parent against the other is not a proper proceeding in which to consider post-majority support. In Taylor, we held that “[cjourts in other jurisdictions have held the custodial parent has no standing to bring an action or seek support for a child after the child attains majority[,]” and found that “[w]e think the same rule applies in this state.” Taylor, 478 So.2d at 313 (citations omitted). After specifically holding that no such right existed, the Taylor Court continued, without citing authority:
In our opinion if there is a legal duty for a parent to support an adult incapacitated child, the duty runs from the parent to the child; not from one divorced spouse to the other. The action should therefore be maintained by or on behalf of the adult child against the parent from whom support is sought.
Id. The chancellor properly found that Mari Lynn’s motion for modification was “procedurally improper with regard to the modification of child support for Rick.”
¶ 12. Although Taylor — in dicta, as it was not an issue to be decided— suggested a procedure for an adult child to seek post-majority support, Taylor clearly did not establish a substantive right (for, indeed, that is a legislative function) to post-majority support, or cite the existence of such authority under either the common law or our statutes. Taylor, 478 So.2d at 313. Nor did Taylor overrule Wright, et al. v. Coleman, 137 Miss. 699, 102 So. 774, 776-77 (1925), which provided that:
Under the common law there is no legal obligation resting upon the adult child to support his needy parent, or upon the parent to support his adult child, but such services between persons occupying such relationships are presumed to be gratuitous and out of a spirit of humanity and affection, and the general rule is that an adult child cannot sue a parent who is a member of his household for support and maintenance in the absence of a contract,[4] express or implied.
Wright, 102 So. at 776-77.
¶ 13. The chancery court properly found that the common law did not endow our courts with the substantive power to require a parent to support an adult child. “The common law of England has, from the earliest times, left this duty [of parents to support their children] to the natural feelings of the parents, and experience has shown that the confidence has not in general been misplaced.” Rawlings v. Rawl- *708 ings, 121 Miss. 140, 83 So. 146, 147 (1919) (citation omitted). We have explained that, “[a]s a general rule, even in the absence of statute, parents are under a legal as well as a moral duty to support, maintain and care for minor children[,] ... [b]ut at common law, the duty imposed on the parents to support their children ceased when the children reached majority.” [5] Watkins v. Watkins, 337 So.2d 723, 724 (Miss.1976) (emphasis added) (citations omitted).
¶ 14. The chancery court also properly found that statutory law did not endow our courts with the power to require a parent to support an adult child. In Watkins, we found that no Mississippi statute vests chancery courts with jurisdiction “to impose a duty on parents to support adult children.” Watkins, 337 So.2d at 724. We find the same today. In 2002, when the child-support judgment was entered, Mississippi Code Section 93-5-23 provided that “[t]he duty of support of a child terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when the child ... [a]t-tains the age of twenty-one (21) years.... ” Miss.Code Ann. § 93-5-23 (2000) (amended 2006) (emphasis added). Justice King correctly observes that Section 93-5-23 makes the chancellor’s determination of emancipation permissive (“[t]he court may determine that emancipation has occurred”). However, it does not follow that, in the absence of an emancipation determination in a child-support judgment, the child remains unemanci-pated beyond the age of majority. This Court has provided that:
Emancipation, as employed in the law of parent and child, means the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent’s legal obligation to support it.
Rennie v. Rennie, 718 So.2d 1091, 1093-94 (Miss.1998) (citations omitted). Obviously, an individual cannot be freed “for all the period of its minority ” after the individual has reached the age of majority and is no *709 longer a minor. Under Mississippi law, a “minor” is “any person, male or female, under twenty-one years of age.” Miss. Code Ann. § 1-3-27 (Rev.2005). In the absence of a determination of emancipation in a child-support judgment, a child is freed for all the period of his minority from the care, custody, control, and service of his parents (ie., he is emancipated) upon attaining the age of twenty-one, at which time Mississippi statute provides that his minority terminates.[6] Accordingly, the duty imposed by Section 93-5-28 for a parent to support its child does not extend beyond the child’s minority, which terminates when the child reaches twenty-one years of age, as provided by our Legislature.
¶ 15. Thus, neither the common law nor statutory law provides to the courts of this State the authority, under the facts as presented today, to require Lon to support Rick. The power to grant the authority to require parents in Mississippi to support their adult children financially is confided to a separate magistracy: the Legislature. Our courts are without the constitutional power to declare otherwise.[7]
CONCLUSION
¶ 16. We conclude that the chancery court properly declined to require Lon to support Rick financially via support payments, by depositing money into a conser-vatorship, or by making alimony payments to Mari Lynn. Accordingly, we affirm the judgment of the Hinds County Chancery Court.
¶ 17. AFFIRMED.
WALLER, C.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. PIERCE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., RANDOLPH, P.J., LAMAR AND COLEMAN, JJ. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.

. Formerly Mari Lynn Alexander.

. Mari Lynn also stated that "Rick has reached the age of majority. However, Lon was legally required by the Agreement to pay half of Rick’s medical expenses and has failed to do so.”

. The conservatorship proceedings are not a part of the record in this appeal.

. The appellants have not proven that such a contract for support and maintenance of Rick exists.

. The Legislature has created two exceptions to the common law. Post-majority maintenance is statutorily provided for in Mississippi Code Section 43-31-28. It provides that a county board of supervisors may require certain family members to provide care for a pauper who is unable to work, as follows, in relevant part:
The father and grandfather, the mother and grandmother, and brothers and sisters, and the descendants of any pauper not able to work, as the board of supervisors shall direct, shall, at their own charge, relieve and maintain such pauper; and, in case of refusal, shall forfeit and pay the county the sum of One Hundred Fifty Dollars ($150.00) per month, for each month they may so refuse, to be recovered in the name of the county; and shall be liable to any governmental entity who supplies such poor relative, if abandoned, with necessaries, not exceeding said sum per month.... Miss.Code Ann. § 43-31-28 (Rev.2004) (emphasis added). We have held that "this statutory liability can only be enforced in the manner provided by statute." Wright, 102 So. at 111.
Post-majority support also is statutorily provided for in a Department of Human Services paternity case. A putative father who has acknowledged paternity and is responsible for making support payments for a minor child is required to continue making support payments if the child has a disability that continues into adulthood. Miss.Code Ann. § 43-19-33(3) (Rev.2004) ("in the case of a child who, upon reaching the age of twenty-one (21) years, is mentally or physically incapable of self-support, the putative father shall not be relieved of the duty of support unless said child is a long-term patient in a facility owned or operated by the State of Mississippi.).

. Moreover, the child-support judgment in this case specifically provided for Lon to make payments for the "support and maintenance of the minor child.” Thus, according to both the definition of "emancipation” and the terms of the child-support judgment at issue, Lon’s duty to make support payments for Rick terminated when Rick reached the age of majority.

. Article 1, Section 1 of tire Mississippi Constitution provides that:
The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.
Miss. Const, art. 1, § 1.