KING, Justice,
specially concurring:
¶40. The question placed before this Court is whether the chancellor erred in requiring lifetime support for a disabled child who has now reached the age of majority. The majority does not answer that question, but instead holds that John failed to timely appeal from the order requiring support for the lifetime of the child, and was therefore not entitled to any relief from the judgment. I agree with the majority that the lifetime support should continue, and therefore specially concur with the majority. However, I write separately because I believe that this Court should, without equivocation, address whether a duty exists for a parent to provide support to a child who is chronologically an adult, but who, due to mental or physical disability, is incapable of caring for himself.
¶ 41. The statutory law of this state recognizes a duty of support until a child’s emancipation. Miss.Code Ann. § 93-5-23 (Rev.2013); Miss.Code Ann. § 93-11-65(8) (Rev.2013). This Court has defined emancipation as
the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent’s legal obligation to support it.
Burt, 841 So.2d 108, 111 (Miss.2001) (quoting Caldwell v. Caldwell, 579 So.2d 543, 549 (Miss.1991)).
*226 ¶42. Twenty-one is generally considered the age of majority and presumptively the age of emancipation, because that age is the presumptive point at which a child has the mental maturity to make his own decisions and the ability to provide for and attend to his own needs. See Watkins v. Watkins, 337 So.2d 723, 724 (Miss.1976); Koltay v. Koltay, 667 P.2d 1374, 1376 (Colo.1983) (“At that age a person is presumed to possess the physical and mental capabilities to support himself, to establish his own residence, and in general to manage his own affairs.”). However, some children, due to mental and/or physical disability, will never have the mental maturity to make their own decisions or the ability to provide for themselves and attend to their own needs. In such cases, the presumption of emancipation may be overcome. See Streb v. Streb, 774 P.2d 798, 800 (Alaska 1989); Riggs v. Riggs, 353 S.C. 230, 578 S.E.2d 3, 5 (2003). “A different interpretation would be wholly inconsistent with the independence that the word ‘emancipation’ connotes.” Koltay, 667 P.2d at 1376. A child who is so mentally or physically disabled as to render him incapable of self-support, and who is thus dependent on one or both of his parents, clearly is not free from the “care, custody, control, and service” of his parents. Furthermore, in such a situation, parental control has not been relinquished.
¶ 43. Thus, under these circumstances, the issue of emancipation is not resolved by a mere presumption, but rather is a question of fact to be resolved by the court on a case-by-case basis, which the Legislature has specifically provided the authority for the courts to do. See Hays v. Alexander, 114 So.3d 704, 708 (Miss.2013) (“the chancellor’s determination of emancipation [is] permissive”); Hays, 114 So.3d at 709-14 (King, J., dissenting);[7] see also Amicus Brief of the State of Mississippi (“Emancipation is only a presumption and not an absolute.”). That position is consistent with the position taken by thirty-three of our sister states, the District of Colombia, and the territory of Guam:
Six states and the District of Colombia have caselaw providing that parents have a duty to support an adult disabled *227 child. See Ex parte Brewington, 445 So.2d 294 (Ala.1983) (interpreting “children” in the -child support statute to mean “dependent” children, not “minor” children, thus including children whose dependency results “from physical and/or mental disabilities that continue to render them incapable of self-support beyond majority”); Streb v. Streb, 774 P.2d 798 (Alaska 1989) (“the presumption of emancipation may be overcome by evidence that an adult child is incapable of supporting himself or herself by reason of a physical or mental disability”); Nelson v. Nelson, 548 A.2d 109 (D.C.1988); Sininger v. Sininger, 300 Md. 604, 479 A.2d 1354 (1984); Feinberg v. Diamant, 378 Mass. 131, 389 N.E.2d 998 (1979); Cohn v. Cohn, 123 N.M. 85, 934 P.2d 279 (Ct.App.1996); Dehm v. Dehm, 545 P.2d 525 (Utah 1976) (defining “children” to include incapacitated children and noting the highly equitable nature of divorce proceedings).
Seventeen states have caselaw providing that parents have a duty to support adult disabled children, and that caselaw was subsequently codified, ratified, or otherwise authorized by later statutory law. See Ark. Code Ann. § 9-12-312(a)(6)(B) (codifying Petty v. Petty, 252 Ark. 1032, 482 S.W.2d 119 (1972)); Cal. Fam. Code § 3910(a) (see Anderson v. Anderson, 124 Cal. 48, 56 P. 630 (1899)); Colo. Rev. Stat. Ann. § 14-10-115(B)(a)(II) (codifying Koltay v. Koltay, 667 P.2d 1374 (Colo.1983)); Fla. Stat. Ann. § 743.07(2) (codifying Fincham v. Levin, 155 So.2d 883 (Fla.App.1963)); 750 Ill. Comp. Stat. Ann. 5/513(a)(1) (codifying Freestate v. Freestate, 244 Ill.App. 166 (1927), and Strom v. Strom, 13 Ill.App.2d 354, 142 N.E.2d 172 (1957)); Ind. Code Ann. § 31-16-6-6(a)(2) (codifying Zakrocki v. Zakrocky 115 Ind.App. 556, 60 N.E.2d 745 (1945)); Ky. Rev. Stat. Ann. § 405.020(2) (see Williams v. West, 258 S.W.2d 468 (Ky.1953) (statute passed in 1952, but not retroactive, yet court found the basis to require support of an adult disabled child without reference to the statute)); Minn. Stat. Ann. § 518A.26 (Subd. 5) (see McCarthy v. McCarthy, 301 Minn. 270, 222 N.W.2d 331 (1974) (dicta)); Mo. Ann. Stat. § 452.340(4) (codifying Fower v. Fower Estate, 448 S.W.2d 585 (Mo.1970)); Mont. Code Ann. § 40-5-201(2)(a)(iii) (codifying Maberry v. Maberry, 183 Mont. 219, 598 P.2d 1115 (1979)); N.J. Stat. Ann. § 2A:34-23(a) (codifying Kruvant v. Kruvant, 100 N.J.Super. 107, 241 A.2d 259 (1968)); Ohio Rev. Code Ann. § 3119.86(A)(1)(a) (codifying Castle v. Castle, 15 Ohio St.3d 279, 473 N.E.2d 803 (1984)); 23 Pa. Cons. Stat. Ann. § 4321(3) (codifying Commonwealth ex rel. Cann v. Cann, 274 Pa.Super. 274, 418 A.2d 403 (1980)); S.C. Code Ann. § 63-3-530(A)(17) (granting court jurisdiction over cases regarding support of adult disabled child, but not creating an explicit duty of a parent to support adult disabled children) (see Riggs v. Riggs, 353 S.C. 230, 578 S.E.2d 3 (2003) (interpreting statute granting court jurisdiction over cases of support of an adult disabled child and finding that “[w]here ... disability prevents the child from becoming emancipated, the presumption of emancipation upon reaching majority is inapplicable”)); Tenn. Code Ann. § 36-5-101(k) (codifying Sayne v. Sayne, 39 Tenn.App. 422, 284 S.W.2d 309 (1955)); Utah Code Ann. § 78B-12-102(7)(c) (codifying Dehm v. Dehm, 545 P.2d 525 (Utah 1976) (defining “children” to include incapacitated children and noting the highly equitable nature of divorce proceedings)); W. Va. Code § 48-ll-103(b) (“Nothing herein shall be construed to abrogate or modify existing case law regarding the eligibility *228 of handicapped or disabled children to receive child support beyond the age of eighteen.”) (declining to abrogate or modify Casdorph v. Casdorph, 194 W.Va. 490, 460 S.E.2d 736 (1995), which provides a duty to support adult disabled children).
Ten states and one territory provide that parents have a duty to support adult disabled children via statute. See Ariz.Rev.Stat. Ann. § 25-320(E); 19 Guam Code Ann. § 4105.1; Haw.Rev. Stat. Ann. § 580-47(a); Iowa Code Ann. § 252A.3(3); Nev.Rev.Stat. Ann. § 125B.110; N.D. CentCode § 14-09-08.2(6); Okla. Stat. Ann. tit. 43 § 112.1A(B)(1); R.I. Gen. Laws § 15-5-16.2(b); Tex. Fam.Code Ann. § 154.001(a)(4); Va.Code Ann. § 20-124.2(C); Wyo. Stat. Ann. § 14-2-204(a)®.
¶ 44. Thus, the presumption that emancipation will automatically occur upon attaining the age of majority may be overcome by facts showing that a child is so mentally and/or physically disabled that he or she is incapable of self-support, as the facts in this case showed when the chancellor entered his original judgment. If it can be shown to a reasonable degree of certainty that emancipation will not occur at age twenty-one due to such disability, then the duty of support does not automatically terminate upon attaining the age of majority.[8] However, the statutes are clear that the duty of support terminates upon emancipation. Thus, a child who becomes disabled after emancipation, by attaining the age of majority or otherwise, does not have a right to parental support under Sections 93-5-23 and 93-11-65. Once liability is terminated, it cannot be restored. Kruvant v. Kruvant, 100 N.J.Super. 107, 241 A.2d 259, 266 (Ct.App.Div.1968).
¶ 45. In the present case, it is undisputed that the child’s mental and physical disabilities render him incapable of exercising the mental maturity to make his own decisions or of having the ability to provide for himself and attend to his own needs. Given these facts, the child is incapable of being emancipated, and is therefore entitled to continued support from his , parents. To hold otherwise would mean that such a disabled child of divorced parents would be forced to either 1) depend upon the state for his care and nurture, 2) depend upon the kindness of strangers for his care and nurture, or 3) be the sole responsibility, financial and otherwise, of the parent who received custody of him in the divorce. See Katherine Byrns, Student Note, Postmajority Child Support for Children with Disabilities, 51 Fam. Ct. Rev. 502, 503-04 (2013) (stating that “[i]t is estimated that overall daily living expenses for families with a child with a disability are 8 to 20 per cent [sic] greater than their counterparts without a disability” and that “[t]he costs of caring for a disabled child are especially burdensome when a single parent cares for that child”).[9]
*229 ¶ 46. This State has specifically provided that a child born out of wedlock, whose disabilities render him incapable of emancipation, is entitled to parental support beyond the age of twenty-one. Miss.Code Ann. § 43-19-33(3) (Rev.2009) (a putative father is not relieved of the duty of support in the case of an adult child who “is mentally or physically incapable of self-support”). However, at present we do not specifically recognize that same protection for a child whose disabilities render him incapable of emancipation if his parents were married and subsequently divorce, despite the statutory authority to do so. See Hays, 114 So.3d 704. Thus, Mississippi mandates a duty to support illegitimate' adult disabled children, but not legitimate ones, or ones whose fathers otherwise recognize and support them. In my opinion, this is an irrational and impermissible discrimination, which deprives an equally disabled child of support solely because his parents were married. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 441, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (classifications based on legitimacy receive a level of heightened scrutiny); Mathews v. Lucas, 427 U.S. 495, 504, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).
¶47. The Equal Protection Clause of the Fourteenth Amendment mandates that no State may “deny to any person within its jurisdiction the equal protection of the laws,” which directs that all similarly situated persons should be treated alike. U.S. Const, amend. XIV; City of Cleburne, 473 U.S. at 439, 105 S.Ct. 3249. The general rule regarding legislation is that it “is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.” Id. at 439-40, 105 S.Ct. 3249. However, classifications based on legitimacy, which include the statutes in question given that no legitimate child could be the beneficiary of child support under Section 43-19-33, receive a higher level of scrutiny. Id. at 441, 105 S.Ct. 3249; Rias v. Henderson, 342 So.2d 737, 739 (Miss.1977) (also noting that support from fathers is “an essential right to a child”). Depriving a disabled child of such an essential right to support simply because his parents were at one time married “is illogical and unjust” and serves no legitimate purpose. See Rias, 342 So.2d at 740 (holding that a statute cutting off child support for illegitimate children at the age of sixteen was unconstitutional because there was no reason “for denying such an essential right to a child simply because its natural father has not married its mother”).
¶ 48. It is the duty of this Court “to adopt a construction of the statutes which would purge the legislative purpose of any constitutional invalidity, absurdity or unjust inequality” so that “an unwise purpose will not be imputed to the legislature when a reasonable construction is possible.” Sheffield v. Reece, 201 Miss. 133, 28 So.2d 745, 749 (1947). To avoid an unconstitutional and discriminatory result, this Court should interpret Sections 93-5-23 and 93-11-65(8) as allowing a chancellor to order child support for an adult child who “is mentally or physically incapable of self-support.” Moreover, such an interpretation effectuates the clear language of the statutes. See Hays, 114 So.3d at 709-14 (King, J., dissenting).
¶ 49. I would thus hold that the child’s disabilities preclude his emancipation, and therefore the chancellor did not err in ordering lifetime support. However, I agree fully with the majority’s disposition *230 of the conservatorship issue, and therefore concur with that part and with the result.
DICKINSON, P.J., KITCHENS, CHANDLER AND PIERCE, JJ„ JOIN THIS OPINION.

. The Legislature provided that a "court may determine that emancipation has occurred pursuant to Section 93-11-65.” Miss.Code Ann. § 93-5-23 (Rev.2013) (emphasis added). This determination of emancipation is clearly permissive, and not mandatory. See Burt v. Burt, 841 So.2d 108, 111-12 (Miss.2001) ("The statutory requirements for emancipation [under the prior version of Section 93-5-23] are clearly permissive and not mandatory; the court may determine that the child has been emancipated if any of the four factors are satisfied.” (emphasis in original)). Thus, the Legislature clearly gave the courts the option to use Section 93-11-65 as guidance to determine emancipation in a divorce case, but did not mandate a finding of emancipation under any particular circumstances. Rather, the statute explicitly gives the courts the authority to determine when emancipation occurs with regard to child support ordered pursuant to a divorce proceeding.
Section 93-11-65 provides that
[ujnless otherwise provided for in the underlying child support judgment, emancipation shall occur when the child:
(i) Attains the age of twenty-one (21) years, or
(ii) Marries, or
(iii) Joins the military and serves on a full-time basis, or
(iv) Is convicted of a felony and is sentenced to incarceration of two (2) or more years for committing such felony[.]
Miss.Code Ann. § 93-1 l-65(8)(a) (Rev.2013) (emphasis added). While emancipation under Section 93-11-65, which is not at issue in this case, "shall” occur when one or more of the four factors is met, this section also provides that emancipation occurs unless the court provides otherwise in the underlying child support judgment. This provision clearly gives courts the latitude to make provisions regarding emancipation in their child support judgments other than those situations outlined in the statute.

. Extending support beyond the age of majority does not necessarily obligate the payor to lifetime support. If, for example, due to medical advances or other circumstances, the adult child receiving support was later rehabilitated to the point where he or she became capable of self-support, or, in other words, became emancipated, a modification or termination of child support could be sought based upon those changed circumstances.

. The article notes that the costs include basic expenses (housing, food, transportation, clothing, and health-related expenses, which tend to cost more for a person with a disability than someone without one), additional expenses incurred as a result of the disability (respite care, specialized or adaptive equipment, environmental modifications, and therapeutic services), and opportunity costs (for example, foregone earnings of the caretaker). See Byrns, supra ¶ 45, at 503-04. It further notes that single mothers of children with *229 developmental disabilities are "significantly more likely to be poor or near poor." Id. at n. 12.