WRIGHT *et al. v.* COLEMAN.*

(Division A. February 2, 1925.)

[102 So. 774.    No. 24416.]

1. PARTITION. *Court could not order sale of homestead of widow more than sixty years of age who had moved from premises, but was being supported in part from products.*

   Under Hemingway's Code, section 1821, and Code 1906, section 1659 (Hemingway's Code, section 1391), court could not order sale of homestead over objection of surviving widow who was more than sixty years of age, and had moved from premises because of infirmities of old age, where products thereof were utilized in her support and maintenance.

2. EQUITY. *Complainant held not entitled to relief on theory other than that pleaded.*

   Daughter, having brought suit against mother and other children on theory that she was entitled, as a matter of law, to a reasonable allowance for the support and maintenance of the mother, and that equity had jurisdiction to fix amount of allowance and make it a charge against the interests of such defendants as tenants in common of the homestead, or a charge against undivided interest of mother, could not recover on theory that she was entitled to allowance because of award of arbitrators.

3. PARENT AND CHILD. *No legal obligation on adult child to support needy parent, or on parent to support adult child, at common law.*

   Under the common law, there is no legal obligation resting on the adult child to support needy parent, or on parent to support adult child.

4. WORK AND LABOR. *Services of adult child for parent, or of parent for adult child, presumed gratuitous at common law.*

At common law, services of adult child for needy parent, or of parent for adult child, are presumed to be gratuitous.

5. PARENT AND CHILD. _Generally adult child cannot sue parent who is member of household for support and maintenance, in absence of contract._

Generally, an adult child cannot sue parent who is a member of his household for support and maintenance, in the absence of an express or implied contract.

6. CONTRIBUTION. _Equity could not compel contribution from other children or parent to adult child who supported parent, in absence of contract._

Where adult child supported needy parent, equity could not fix amount necessary for support and compel contribution from the parent or the other children by imposing lien on property of parent or other children for payment of sum so fixed, in absence of express or implied contract on part of parent or other children to pay for such support.

*Headnotes 1. Homesteads, 29 C. J., Section 511; 2. Equity, 21 C. J., Section 855; 3. Parent and Child, 29 Cyc., pp. 1612, 1620; 4. Work and Labor, 40 Cyc., pp. 2817, 2818, 2820; 5. Parent and Child, 29 Cyc., pp. 1620, 1621; 6. Contribution, 13 C. J., Section 26.

APPEAL from chancery court of Leake county.

HON. T. P. GUYTON, Chancellor.

Bill by Mrs. Lula Wright Coleman against R. P. Wright and others. Decree for complainant, and defendants appeal. Decree reversed, and bill dismissed.

_Wells, Stevens & Jones,_ for appellants.

It is perfectly manifest from the record that ill feeling exists between the complainant in this case, and the defendants. It is all a family row. Mrs. Coleman, the only daughter, took charge of her mother in order to get possession of the home place, and have her husband rent it and use it. She has objected to the other children visiting Mrs. S. A. Wright, or having anything to do with her. The original bill is something new in the jurisprudence of this state. It is both an effort to have a partition of the home among the tenants in common and also an effort to appropriate the proceeds under a so-called

arbitration agreement, reflected by Exhibits A. and B. to the original bill. When a demurrer was interposed and sustained to the original bill, the complainant then restated her case from first to last in an amended bill, and, in doing so, abandoned any relief predicated upon the arbitration.

It is certainly true that the aged grandmother has a moral claim at least against her children and grandchildren for loving attention. It appears that different members of the family had ministered to her so long as she was living in the home, and it further appears that so far as her financial condition was concerned, she was not a pauper, but had a home and some livestock, and was drawing some kind of a pension, the nature and amount of which the record does not disclose. But the amended bill undertakes to state a case showing that the widow had abandoned the homestead and had ceased to use or occupy the same, and for that reason it was subject to partition. The statute which we have shows that the homestead in charge of the widow is not subject to partition or sale.

Under the authority of *Moody* v. *Moody,* 86 Miss. 323; *Stevens* v. *Wilbourn,* 88 Miss. 514; *Dickerson* v. *Lesley,* 94 Miss. 627; *Tally* v. *Tally,* 108 Miss. 84, and *Williams* v. *Williams,* 111 Miss. 129, the court cannot partite or sell the homestead for division of proceeds ''without her consent.''

In *Tally* v. *Tally, supra,* the court sustained a bill in the nature of a bill of review, to set aside a decree ordering the homestead to be sold for partition, and this court upheld the relief in an opinion by the present Chief Justice, observing, among other things: ''Since under section 1659 of the Code, the land cannot be sold without her consent, the decree ordering and confirming the sale thereof should be vacated and the original bill praying for the sale should be dismissed.'' There is no evidence of any consent whatever in this case. Although S. A. Wright, the widow, was a member of the household of the

complainant and did not actually occupy the homestead, yet it affirmatively appears that she did not join in the original bill, but on the contrary is made a defendant, and we have the unusual spectacle of the adult daughter having personal charge of her aged mother, filing a suit against her mother while she is under the complainant's roof, seeking to dispose of the exempt homestead. The proceeding is in the face of our wise exemption law expressing the public policy of the state.

The pleadings and the testimony affirmatively show that the widow for fifteen years or more actually occupied the home until she became an invalid and very aged and was forced to leave through the necessity of having someone to nurse her. The day before she left, according to the testimony of J. C. Coleman, she, the widow turned the place over to him to manage and use as he thought best, and evidently as a part of the understanding that she was going into his household as a member of his family. The very next day, the 28th, she was carried to his home and Mr. Coleman took charge of the home and has been using it ever since. J. C. Coleman's use and possession, therefore, is the use and possession of the widow, and the latter, at least indirectly, is getting the benefit of the place, or, in other words, the homestead is being "used by the widow."

The amended bill recognizes the homestead, but by a species of confession and avoidance undertakes to allege that the homestead is not being used. We submit that the amended bill is demurrable on this point, because it shows on its face that the widow is approximately eighty years old and left the actual occupance under impelling circumstances, and that she turned the place over to her son-in-law, Mr. Coleman, under an arrangement whereby she was going to his home to live. The very arbitration agreement relied upon in the original bill shows that any support furnished by Mrs. Coleman would be in the nature of an advancement on the purchase price of the homestead, but that so long as the

widow lived the arbitrators declared that she should man-
age the homestead, as she was mentally able to do so.
Both under the arbitration agreement and under the al-
legations of the amended bill, the widow has certainly
been using the homestead. Likewise, under the proof in
this case, she is using the homestead. The homestead,
therefore, is still the exempt property of the widow, and
is not subject to partition, and the amended bill cannot
be justified on any theory that this is a partition suit.

The arbitration agreement cannot justify the relief
awarded. The prayer of the amended bill and the de-
cree as rendered cannot be justified or predicated upon
the alleged arbitration agreement. We say this, first,
because the amended bill did not declare on the arbitra-
tion agreement, or in anywise refer thereto, or make the
said agreement a part thereof. The complainant had a
right to abandon her theory as put forth in the original
bill and to re-state her case entirely by the amended
bill. When a demurrer is exhibited to the original bill in
equity and sustained, the complainant must re-state his
case by an amended bill. It might be possible to write
an amendment to the original bill in a way to make the
original bill along with the amendment to constitute an
amended bill. It would be unusual, but it might be pos-
sible. But in the case at bar, the pleader restated her
case altogether and of course had a right to abandon the
arbitration agreement as a predicate for the relief
sought, and the amended bill must stand or fall as writ-
ten. It is elementary that no relief can be granted which
is not made the basis of relief in the bill, and also that
all relief must respond to the bill and the prayer thereof.

Looking then to the amended bill, no right is based up-
on the arbitration agreement, and no prayer is drawn
thereon.

In the second place, if the amended bill had referred to
the arbitration agreement and relief upon it, the arbi-
tration agreement if valid would speak for itself. Now,
this arbitration agreement and award show upon their

face that—"the matters in dispute submitted are these . . . the property of said Mrs. S. A. Wright *to* be disposed of for her support and for the arbitrators to say where she shall live." And then the arbitrators proceeded to find and declare among other things that—"the control and management of her place be in her own hands, as she is mentally capable of doing so, and at her death a title to the place be made to the person caring for her by the heirs of said S. A. Wright at the price above mentioned," indicating the purpose and intent that the homestead be left under the supervision and control of the widow as her exempt homestead as long as she should live, and at her death the place to be disposed of.

The amended bill cannot be upheld upon any alleged right of the complainant to impress a lien upon the homestead. The learned Chancellor had no right to impress a lien upon the exempt homestead based either upon the arbitration agreement or upon any rule of law. The complainant shows by her own testimony that the matter was submitted to arbitration, and that she elected to stand by the award of the arbitrators, and if this be true, she is remitted to her rights under the arbitration agreement. If the amended bill had declared upon the arbitration agreement, then the defendants would have had a right to answer and to raise any issue as to whether the award was legally submitted and accepted by the complainant. It will be observed that no one is named by the arbitration award to take charge of the widow. She says that she took charge of her mother in pursuance of the arbitration. By her original bill and by her testimony she is estopped to claim anything to the contrary. She is estopped to declare in her amended bill for a reasonable support and to have that support now made a charge against the undivided interest of the other heirs, when by the arbitration agreement she agreed to care for her mother at forty dollars per month and let the place stand and not be disposed of until after her mother's death. She is estopped from bringing a suit of this kind during

her mother's lifetime.   As a matter of law and under the
testimony in this case, the amended bill should have been
dismissed.   On the trial the complainant attempted to
recover a reasonable amount, and the court fixed the rea-
sonable amount at forty dollars per month.   The com-
plainant by her own testimony shows that she accepted
the job at forty dollars per month and that she is to be
paid out of the land.

The court granted a relief that was not prayed for or
sought by the amended bill.   The decree for that reason
should be reversed, and the amended bill dismissed.   And
this decree cannot be aided under any conception or the-
ory that the complainant could sue her mother for a rea-
sonable support.

The general rule of law is that an adult child cannot
sue a parent who is a member of his household, for sup-
port and maintenance in the absence of an express con-
tract, and the contract must be established by proof clear,
positive, and convincing.   The presumption is that there
is no contract.   This presumption arises through the in-
timate family relationship.   Under the common law, there
is no obligation resting either upon the adult child to
support the aged parent, or upon the aged parent to sup-
port the adult child, but services rendered one to another
are presumed to be gratuitous and out of a spirit of hu-
manity and affection.   This is ordinarily the case, and
suits of this kind are very rare.   Besides, we have homes
or retreats for the aged and infirm, and the Government,
under the influences of an enlightened age, provides for
all paupers.   29 Cyc. 1620.

We have statutes regulating the rights of paupers and
the obligations of relatives to support a pauper.   Section
6188, Hemingway's Code.   Under this statute, the re-
lief is limited to eight dollars per month and this must
be sued for and recovered in the name of the county.   It
will be observed that the text in Cyclopedia, cited above,
declares—''the statutory liability can be enforced only
in the mode pointed out in the statute,'' citing in foot

note No. 29 two cases from Connecticut, one from New York, and one from Oregon. No cases are cited to the contrary.

We invoke the rule that the statutory procedure is exclusive. It may be that the liability can be assumed by express contract. We think it can, but it is not evident in this case that the defendant heirs have assumed the burden by any definite contract whatsoever, although several of them have contributed and are yet willing to take Mrs. Wright to their homes and care for her. Besides, this is not a suit by Mrs. Wright against the sons and grandchildren, but this is a suit by the adult daughter against her mother and her brothers and the grandchildren of her mother. In the absence of a clear contract, no relief could be granted in this suit.

17 Cyc. 412, note 60 says: "This rule has been applied to a claim for support or services by a child against the estate of a parent," citing many cases. 20 R. C. L., par. 4, p. 6587. A claim somewhat in the nature of the one here sued for met the condemnation of this court in *Hoyle* v. *Smith,* 113 Miss. 729, 74 So. 611. "The obligation of a child to support its parents rests entirely on statute." *Dawson* v. *Dawson,* 112 Iowa, 512.

"The child is not liable at common law for the support of an infirm and indigent parent. His liability is, however, created by statute. There is, therefore, no implied promise on the part of the child to pay for necessaries furnished to such parent without his request, and the obligation can only be enforced in the mode pointed out by the statute." *Edwards* v. *Davis,* 16 Johns. 281.

"A widow in the absence of an express agreement is not chargeable to her daughter for the board of herself and her imbecile son." *Howe* v. *North,* 69 Mich. 272, 37 N. W. 213.

"Where a son takes his decrepit parents to board no contract for payment is implied." *Appeal of Miller,* 100 Pa. 568, 45 Sm. Rep. 394.

In *Rawlings* v. *Rawlings,* 121 Miss. 140, 83 So. 146, this ·court quoted from the New Jersey and Connecticut courts about the jurisdiction of chancery to compel a parent to support a child. If equity has no jurisdiction of a suit on behalf of an infant .child to require a parent to support it, then, by the same token and under like principles, equity would have no jurisdiction of a suit on behalf of the parent against a child. In fact, the proceeding on behalf of an infant child would have stronger claim on equity. ·

The presumption is, and the general rule has been announced by many courts, that an adult child is not entitled to recover compensation for · services rendered while he was a member of his father's family. The presumption of law is that the service is gratutitous. The court will find the authorities collated on this question in 11 L. R. A. (N. S.) 879, 880. Closely connected with this rule is the presumption that where a parent goes to live with a child—"the law ordinarily implies no promise on the part of the former to pay the latter for board and services." *Marple* v. *Morse,* 180 Mass. 508, 62 N. E. 966; *Hallock* v. *Teller,* 2 Dem. 206 (N. Y. Surrogate's Court); *Lyn* v. *Lyn,* 29 Pa. 369; *Pritchard* v. *Pritchard,* 69 Wis. 373, 34 N. W. 506.

The fact that Mr. Coleman, the husband, helped to contribute to the support does not change the rule. "A husband claiming for services rendered by his wife to her parents has no higher right than the daughter herself." *Patton* v. *Conn,* 114 Pa. 183, 6 Atl. 468.

"In some instances the claims of adults for services rendered to their parents have been rejected, although the parties were not living together as members of the same family at the time when the services were rendered." *Penter* v. *Roberts,* 51 Mo. App. 222; *Zimmerman* v. *Zimmerman,* 129 Pa. 229, 15 Am. St. Rep. 720; *Wessinger* v. *Roberts,* 67 S. C. 240, 45 S. E. 169.

The same rule applies when it comes to the claim of a parent to recover for services rendered a child. 11 L. R. A. (N. S.) 881.

We find, therefore, from the authorities that this suit cannot be maintained under any theory, and the amended bill should have been dismissed outright.

*R. D. Cooper* and *J. M. Scott,* for appellee.

The original bill, exhibits thereto, together with the amended bill with the same exhibits, are all in this record for the consideration of the court. The theory entertained by appellee at the time the original bill was filed by reason of the physical condition of the widow having moved from the homestead as a result of the agreement to arbitrate the matters and the articles of arbitration.

The bill charged that the property referred to in the exhibits was very much out of repair, only a few acres that could be cultivated. The fact that the property was not occupied, neither was it "used" that is to say the use of the property produced no profits or rents of any consequence. We had an idea that the word "use" or "used" meant more than the mere enjoyment of the property; that the property was not occupied and was not "used" and it being physically impossible for the widow to use the same, except she could say she had an interest in it. The bill prayed for the sale of it and division of the proceeds according to law and adjusting the equities therein as between these tenants in common. We had in mind the equities were that the expense of improving the property, the taxes paid on the place, expended by the appellee, and that the court would allow these less a reasonable rental value of the property. The bill also prayed for general relief.

The original bill was met by a demurrer on the theory as advanced in the lower court that because the widow was not dead, appellee had no right of action. The demurrer being sustained, appellee undertook to amend the bill by striking from the original bill these exhibits

and filed it and used one word in the amended bill, to-wit:
"After some 'conferences' between the children it was
denied that the mother, widow as before stated, should
live with one of the children and complainant being the
only daughter, the mother, concluded to live with her."
Whether this conference or conferences carrier with it
some written agreement or a verbal one is and was left
open for interpretation by the court during the progress
of the trial. The amended bill did charge in the use of
this word that appellee's mother, the widow, moved to
her home as a result and in accordance with some agree-
ment, and the foundation of the amended bill is predicated
on that word followed by a general prayer, etc., for re-
lief to be based upon whatever testimony the court might
hear and give relief thereto. We had hoped for these
exhibits to get back into court on the trial of the case
to be used as evidence and in our hope we were not dis-
appointed. We undertook however, independent of these
exhibits to show an agreement on the part of the defend-
ants to pay appellee for the care and support of their
mother.

Just what appellants are complaining about we are not
advised. The decree is not enforceable now nor can be
until the death of the widow, the mother of these parties,
and when that time comes the decree only is for the lien
to be enforced on the land of certain of the adult heirs,
and is not a decree *in personam* and the appellee is lim-
ited to the interest of the defendants in this land. If
the place should be put up and sold at public sale and if
it brought only five hundred dollars, appellee has no
more privilege than the public to bid on it and should she
choose to accept the bid whatever sum was lacking to
satisfy this decree as rendered would go for naught.

Mr. R. P. Wright, the leading defendant, and appel-
lant herein, states in his testimony that he is willing to
stand by this agreement. According to our understand-
ing of this case, the appellee has no more now in this
decree than she had in the beginning, except the decree

is of record to give notice to the public as to her rights in the land. The agreement and arbitration gives her everything the decree mentions except the amount of debt and the paper is proved in court. Appellee would be fairly content if these papers, exhibits "A" and "B" were recordable, only but for the fact the property mentioned in these exhibits is not sufficiently described, we fear so as to give notice to the public.

The amended bill made the same charge with few changes and did not specifically use the exhibits, but same were meant as herein above stated, but that if the court permitted we would show all the facts that had any bearing on the subject-matter, as to taxes, improvements, rents and every conception of the case that came to our relief or possible relief. It was perfectly manifest to appellee that she was being unjustly treated.

We have no more than we started with, except we have a better description of this place and the decree is of record to give notice to the public. We did not prosecute an appeal and we are not allowed to complain in this court. Just why the appeal we do not know. The land will not sell. There is no decree against any particular one. There is no money to pass from any one of the appellants at no time, present or future. Under the terms of this decree when this widow dies, unless the other heirs make a deed to their interest in this land, she, the appellee, will again have to come back in court to enforce this lien.

Appellants do not deny that their mother lived with Mrs. Coleman, the appellee, nor deny that she was supported, nor did they undertake to show to the court that the arbitrators were wrong in the amount awarded, nor that the valuation was either too high or too low. We submit that the decree should be affirmed.

Argued orally by *J. M. Stevens,* for appellants.

COOK, J., delivered the opinion of the court.

The appellee, Mrs. Lula Wright Coleman, filed an orig-
inal bill in the chancery court of Leake county against
her mother, Mrs. S. A. Wright, and the other heirs at law
of John R. Wright, deceased, father of the complainant.
The bill alleged the relationship of the parties, and
charged that since the death of the husband and father,
John R. Wright, Sr., two of the sons, John R. Wright,
Jr., and Floyd Wright, have died, leaving certain heirs,
who were made parties defendant to the bill; that the
widow, Mrs. S. A. Wright, and the other parties to the
suit owned the lands described in the bill as tenants in
common; that for many years after the death of John
R. Wright, Sr., his widow continued to live upon the land,
but that in the latter part of the year 1919 the widow
became physically unable to wait upon herself and to
look after the place, and that it became necessary for the
children to devise some plan whereby one of the children
would take charge of the mother, and, being unable to
agree, finally submitted the matter to arbitration; copies
of the agreement to submit the matter to arbitration and
the award of the arbitrators being attached to the bill
as exhibits. It is further alleged that, in accordance with
the decision of the arbitrators, the complainant took her
mother, the defendant, Mrs. S. A. Wright, into her home
on January 28, 1920, and has had her there since that
time; that the complainant has not received anything for
the support or maintenance of her mother, and that the
other children and grandchildren, defendants, have re-
fused to contribute anything, although they are able so
to do; that the complainant has attempted to get the
other children to convey to her their interest in the said
land, but without effect, and that she has tried to get
her mother to sign a deed to her interest in the land, but
that she had refused to do so, notwithstanding the fact
that her mother lives with her as a member of her fam-
ily. The bill further charged that the widow, complain-
ant's mother, draws a pension from the state, but has
contributed nothing toward her care and support; that

she no longer lives on the said land, and that the same should be sold under the directions of the court and the proceeds of sale awarded to the complainant in payment of the maintenance and support furnished by her. The prayer of the bill being that a decree be entered, ordering a sale of the land by a commissioner to be appointed by the court, and "that the proceeds of the sale be divided among the heirs and adjusting the equities as herein and such other special or general as the court may decree to be just and equitable in the premises."

Exhibit B to this original bill is an agreement designating the matters in dispute to be submitted to arbitration, as follows:

"The property of said Mrs. S. A. Wright to be disposed of for her support and for the arbitrators to say where she shall live."

The award of the arbitrators, Exhibit A to the bill, was, first, that the homestead was of the value of one thousand five hundred dollars, and, second, "that forty dollars per month be allowed for her care and maintenance, and her medical expense be allowed extra, and that the control and management of her place be in her own hands, as she is mentally capable of doing so, and at her death a title to the place be made to the person caring for her by the heirs of said S. A. Wright at the price above mentioned. And the expense of caring for her be counted as payment on the place and, if the expense does not cover the price of the place, the remainder to be paid equally to the heirs, and in case the expense exceeds the price of said place the other heirs are to bear an equal part of same."

To this original bill the widow, Mrs. S. A. Wright, one of the defendants, interposed a demurrer, setting up as one of the grounds thereof that the land involved was the homestead of said defendant and her deceased husband at the time, and that the bill failed to allege that she had given her consent for the sale of said lands, and that, in

fact, she had not given such consent. This demurrer was sustained, and the complainant was granted thirty days within which to file an amended bill.

An amended bill was filed reiterating the charges as to the relationship of the parties, the description of the land, and the interest of the parties therein, and averring that, after some conference between the children it was decided that the mother should live with one of the children, and that, complainant being the only daughter, the mother concluded to live with her, that when the mother left the homestead it was vacant and run down, but that, during the four succeeding years, the rental value had increased by reason of the fact that complainant's husband had fenced the land, repaired the house, and opened up additional land, but that the rental value was sufficient to pay only a small part of the cost of the support and maintenance of her mother. The amended bill further avers that the complainant recognizes the homestead right of the widow so long as the lands are occupied or used by the said widow, but charged that said land was not occupied by the widow as a homestead, and was not used by her in the contemplation of the law, and that consequently the said land was subject to sale for partition, and prayed that a decree be granted, directing the sale of the lands and a division of the proceeds among the heirs ''according to the law and as their interest therein may appear, subject to such equities as the complainant may have in the premises for the reasons stated in said bill.'' This amended bill further prayed that, in the event the court should hold that the lands could not be sold for partition, it should ''allow a reasonable sum of money with which to maintain and support her mother, and that, after said sum has been established to the satisfaction of the court, a decree be granted her fixing said amount in favor of complainant against the said widow, Mrs. S. A. Wright, and that a lien be fixed against the interest of the said widow in said land to secure the payment of said sum. There was a further

prayer that, in the event the court refused to order a sale of the land, the court should fix a definite sum of money as due the complainant for the care and support of her mother, and that the total sum so found to be due be made a charge against the land as a whole; a lien being fixed thereon to secure the payment of said sum.

The defendants answered this amended bill, admitting the relationship of the parties and the ownership of the land, but denying all the material allegations of the bill, and averring that the land was the exempt homestead of the widow, and was not subject to partition. There are many other averments in the answer which show the relation of and feeling between, the parties, but these are not material here. There was a great deal of testimony introduced by both sides. We shall not set out this testimony in detail, or comment thereon further than to say that, if it is true, it shows a state of affairs which is very discreditable to both the complainant and the other children of this aged and infirm widow.

At the conclusion of the testimony the chancellor entered a decree, allowing the complainant the sum of forty dollars per month for the support and maintenance of her mother, which at the time of the trial aggregated the sum of one thousand nine hundred sixty dollars, and decreeing that an equitable lien arising out of the contract and agreement of the paries thereto be established against the interest in the lands of each of the subscribers to Exhibit B to the original bill; these subscribers, other than the complainant, being the widow, Mrs. S. A. Wright, and three of her sons, and also the widow of John R. Wright, Jr., deceased. The decree further provided that this lien should not be enforced during the lifetime of the widow, Mrs. S. A. Wright, and that the decree should not have the force and effect of a decree *in personam* against any of the defendants.

The chancellor refused to order a sale of the land, and he was correct in so doing. The widow, Mrs. S. A.

Wright, one of the defendants, was present in court, objecting to a sale of the land, and the evidence shows that she was over the age of sixty years, and had moved away from the homestead on account of the infirmities of old age, and that the products thereof were utilized by the complainant and her husband in the support and maintenance of the mother. Section 1821, Hemingway's Code, providing exemptions to householders and heads of families, expressly provides that a "husband or wife, widower or widow, over sixty years of age, who have been exemptionists under this section, shall not be deprived of such exemption because of not having family or not occupying the homestead," while section 1659, Code of 1906 (section 1391, Hemingway's Code), provides that:

"Where a decedent leaves a widow to whom, with others, his exempt property, real and personal, descends, the same shall not be subject to partition or sale for partition during her widowhood, as long as it is occupied or used by the widow, unless she consent."

In the case of *Tiser et al.* v. *McCain et al.*, 113 Miss. 776, 74 So. 660, in construing the latter section, the court said:

"The object of the statute was to provide a home and a means of support for the widow to prevent her becoming a public charge or becoming a wanderer on the face of the earth without means of livelihood or place of abode, except such as might be offered her by others. The words 'or used,' following the words, 'so long as it is occupied,' clearly intend that it is not necessary for the property to be physically occupied, but, so long as the income of the property is used for the support of the widow, whether she be residing upon the property or not, that the property cannot be partitioned without her consent."

The decree of the court below appears to have been based, in part, upon the purported arbitration, but we do not think that, in this suit, any relief can be predicated on any agreement for arbitration or award of arbitrators. The amended bill does not declare upon the arbi-

tration agreement or award. It does not refer to the submission of any issues to arbitrators, and does not refer in any way to the arbitration or the exhibits to the original bill. The validity of the purported arbitration agreement and award was in no way put in issue by the pleadings. The amended bill is not an effort to enforce, modify, or confirm any award of arbitrators, but seeks relief independent of the award and at variance with its terms, and appears to proceed upon the theory that the complainant was entitled as a matter of law to a reasonable allowance for the support and maintenance of her aged mother, and that a court of equity has jurisdiction to fix the amount of this allowance and make it a charge, first, against the interest of all the tenants in common of the homestead, or, if the court should decide that could not be done, then, to make it a charge against the undivided interest of the widow.

The question then arises whether the amended bill can be upheld upon any alleged right of the complainant to impress a lien upon the homestead for the support and maintenance of her mother, either upon interests of all the heirs therein, or the undivided interest of the mother only.

Under the common law there is no legal obligation resting upon the adult child to support his needy parent, or upon the parent to support his adult child, but such services between persons occupying such relationships are presumed to be gratuitous and out of a spirit of humanity and affection, and the general rule is that an adult child cannot sue a parent who is a member of his household for support and maintenance in the absence of a contract, express or implied. In 29 Cyc. 1620, the doctrine is announced that:

"Where a parent lives with a child as a member of the latter's family, and is supported by the child, this fact of itself gives rise to no implication of a promise on the part of the parent to pay for support, and the child cannot recover for what has been done or furnished, un-

less, of course, there was an express contract of the parent to pay, or a mutual understanding of the parties that the child is to be paid, for the support and care of the parent, which understanding may be implied from the circumstances of the case and the conduct of the parties.''

In many, if not all, of the states, however, statutes for the relief of paupers and indigent persons impose a duty or obligation upon certain of their kindred to contribute to their support; but this statutory liability can only be enforced in the manner provided by statute. In 26 Cyc. 1620, it is said:

''Under statute, however, it is very generally made the duty of the child, who is able to do so, to support its parents when the latter are helpless and indigent, but the statutory liability can be enforced only in the mode pointed out by the statute.''

The only statute in this state regulating the rights of paupers and the obligation of relatives to support a pauper is section 3571, Code of 1906, section 6188, Hemingway's Code, which provides:

''The father and grandfather, the mother and grandmother, and brothers and sisters, and the descendants of any pauper not able to work, as the board of supervisors shall direct, shall, at their own charge, relieve and maintain such pauper; and, in case of refusal, shall forfeit and pay the county the sum of eight dollars per month, for each month they may so refuse, to be recovered in the name of the county; and shall be liable to any person who supplies such poor relative, if abandoned, with necessaries, not exceeding said sum per month.''

If this statute creates any right in one child who is supporting an indigent parent to sue the other children for contribution, which we do not now decide, the relief is limited to eight dollars per month, to be recovered in the name of the county. This suit, however, is not brought under this statute, and does not assert any right

thereunder, and, if any liability exists in this case against any of the defendants, it must be by reason of contract either express or implied. Many of the courts have held that in such cases liability for the support of an indigent parent only arises under an express contract, and the language of this court, in the case of *Hutcheson* v. *Tucker et al.*, 15 So. 132, seems to be to that effect, but, since there are no facts or circumstances in this record from which the law would imply a promise on the part of the indigent parent or other defendants to pay for her maintenance and care, we express no opinion upon the point. If one child supports the parent at the request of the others, he may, of course, recover from them their share of the expense, but the testimony for this complainant is positive that the other children made no such request of her, but that, on the contrary, they refused to agree to contribute any amount. We recognize to the fullest extent the obligation of an adult child to support his indigent parent; but, where such a parent is being adequately supported by one child, a court of equity is without jurisdiction to fix the amount necessary for such support and compel a contribution thereto by imposing a lien upon the property of the parent or the other children for the payment of the sum so fixed. In such case, in the absence of a contract, express or implied, on the part of such parent or the other children to pay for the support of the parent, no liability therefor exists against them. Upon the proof in the case at bar the chancellor held, and we think correctly, that there was no personal liability against any of the defendants, and, this being true, it was error to impress a lien upon their property for the payment of the sum fixed by him as being necessary for the support of the parent. Upon this bill of complaint no relief can be predicated upon the alleged arbitration agreement or award, and, since the proof fails to establish a contract, the bill should have been dismissed.

The decree of the court below will therefore be reversed, and a decree entered here dismissing the bill of complaint.

*Reversed and bill of complaint dismissed.*