# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-01890-SCT

*MARI LYNN HAYS (ALEXANDER) AND LON
FREDERICK ALEXANDER, II, BY AND
THROUGH HIS CONSERVATOR, MARI LYNN
HAYS*

*v.*

*LON FREDERICK ALEXANDER*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/29/2011 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | SARAH ANN ELLIS |
| | JAMES D. BELL |
| ATTORNEY FOR APPELLEE: | T. JACKSON LYONS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 06/06/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Before the Court is an appeal of a motion for contempt and modification of alimony and child support first filed by Mari Lynn Hays,[1] and later amended to include Mari Lynn in her capacity as conservator for Lon Frederick Alexander, II ("Rick"), seeking unpaid alimony and child-support payments and additional financial support from her former husband, Lon Frederick Alexander ("Lon"), for the couple's adult son, Rick. Mari Lynn

---

[1]Formerly Mari Lynn Alexander.

claims that the chancery court erred by failing to: (1) require Lon to pay additional alimony and/or child support after Rick had reached the age of majority; or (2) require Lon to make payments into a conservatorship to support Rick after Rick attained the age of majority. We find that the chancery court did not abuse its discretion by declining to require Lon to provide post-majority financial support for Rick, for state law does not vest our Court with the authority to mandate that parents financially support their offspring post-majority. Accordingly, we affirm the judgment of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶2.     Mari Lynn and Lon were married in 1986, and their only child, Rick, was born in December 1987. On August 2, 2001, Mari Lynn filed a "Complaint for Divorce on Ground of Irreconcilable Differences" in the Hinds County Chancery Court. On October 17, 2002, the chancery court issued a "Judgment of Divorce – Irreconcilable Differences" incorporating Mari Lynn's and Lon's "Agreement for Custody and Maintenance of Child and Settlement of Property Rights" ("the agreement"). At that time, Rick was fourteen years old.

¶3.     The agreement provided that Mari Lynn and Lon would have joint legal custody. Mari Lynn would have primary physical custody. Lon would have weekend visitation. Lon was to pay Mari Lynn $1,500 each month "for the support and maintenance of the *minor* child" and maintain health insurance covering Rick. (Emphasis added.) The parties were to share equally all reasonable medical expenses. Lon also agreed to pay all of Rick's private school expenses and college-education expenses through a baccalaureate degree, so long as Rick was actively pursuing a degree and maintaining a 2.50 grade-point average. The agreement

2

further provided that Lon was to pay lump-sum alimony of $100,000 to Mari Lynn in four payments of $25,000, and installment alimony of $9,500 each month for one-hundred-eight months.

¶4.    On October 26, 2010, Mari Lynn filed a "Motion for Modification, and Motion for Contempt[,]" alleging that Lon was in arrears in alimony, medical, and college-expense payments under the agreement, and seeking additional financial support from Lon due to Rick's medical conditions. At that time, Rick was less than two months shy of his twenty-third birthday, well past the age of majority. Mari Lynn requested that the chancellor extend Lon's alimony payments or require him to reinstate child-support payments past the age of majority.

¶5.    On April 21, 2011, the chancellor held a hearing on Mari Lynn's modification and contempt claims. At the close of the hearing, the chancellor asked for briefs regarding "why and how I could modify the alimony as well as the child support and what basis I should do it under. And I would like for y'all to get together and submit to me what you think is owed in alimony from both sides. And I will pick a number if y'all can't agree on something." Thereafter, Mari Lynn provided that Lon owed $59,000 in past-due alimony, had not paid Rick's college tuition for the fall of 2010, and had not paid half of Rick's medical expenses.[2]

---

[2]Mari Lynn also stated that "Rick has reached the age of majority. However, Lon was legally required by the Agreement to pay half of Rick's medical expenses and has failed to do so."

¶6.     On May 31, 2011, the chancellor ordered Lon to pay Rick's outstanding college expenses, as required by his agreement. On June 15, 2011, the chancellor permitted Mari Lynn, in her capacity as Rick's conservator, to be added as a party plaintiff.[3] On June 29, 2011, the court entered an order declining to find Lon in contempt, based on its findings that Lon had paid half of Rick's medical bills *until Rick reached the age of majority, as required by the divorce decree*; Lon had reasonably believed that Rick's delay in returning to college relieved him of his duty to continue paying Rick's tuition; and Lon had demonstrated an inability to pay an increase in alimony. The chancellor ordered Lon to reimburse Mari Lynn $1,083.15 for his portion of Rick's college expenses for the fall semester of 2010, which Mari Lynn had paid, and found that Mari Lynn was entitled to a judgment against Lon in the amount of $59,000 for past-due alimony. However, the chancellor declined to require Lon to make child-support payments *in futuro* for Rick, finding no legal basis for an action, brought by one parent against the other, seeking post-majority support payments.

¶7.     On July 11, 2011, Mari Lynn filed a motion to amend the motion for modification to reflect her status as Rick's conservator, and to request – in addition to her requests for continued alimony and child-support payments – that the chancellor require Lon "to provide support directly to [Rick], through his Conservator . . . ." On December 9, 2011, the chancellor entered an order, *inter alia*, addressing Mari Lynn's amended motion for modification. The chancellor recognized that "[i]n its Order, the Court did not make any

---

[3]The conservatorship proceedings are not a part of the record in this appeal.

4

reference to the recent appointment of Mari Lynn Hays as Rick's conservator[,]" and stated that "[b]ecause the proof that would be offered in support of the Amended Motion is identical to the proof already received by the Court . . . , rather than try the issue a second time, for the sake of judicial economy, the Court hereby adopts the evidence at the first trial for the Amended Motion." The chancery court denied Mari Lynn's request that Lon be required to support Rick by depositing money into a conservatorship, holding that the court was without legal authority to grant the request.

## ISSUES

¶8.    Mari Lynn raises the following arguments on appeal:

(1) The chancery court erred by failing to modify Lon's *alimony* obligation upward.
(2) The chancery court erred by failing to modify Lon's *child-support* obligation upward.
(3) The chancery court erred by failing to order Lon to pay monies into a conservatorship for Rick.

## LAW AND ANALYSIS

¶9.    We will reverse a decision of the chancery court in a domestic-relations case where the chancery court applied an erroneous legal standard or reached a manifestly wrong or clearly erroneous decision. ***Williams v. Williams***, 37 So. 3d 1171, 1173-74 (Miss. 2010).

¶10.    We find that the chancery court properly denied Mari Lynn's request that Lon be required to provide support *in futuro* for Rick after Rick attained majority. The chancellor found as follows, in relevant part:

> a modification proceeding is an inappropriate proceeding in which to decide
> whether a parent has a legal duty to contribute to the support of an *adult*

5

disabled child. ***Taylor v. Taylor***, 478 So. 2d 310, 312 (Miss. 1985). Therefore, this Court finds that Plaintiff's Motion for Modification is procedurally improper with regard to the modification of child support for Rick. Further, this Court would note that it is without statutory authority or jurisdiction to entertain the consideration of continued support for an adult disabled child. It is the Court's sincere hope that the Mississippi Supreme Court will address this specific issue and give direction to the chancery courts of this state. It is also the Court's sincere hope that the Mississippi Legislature will address this matter. Until such time, however, this Court is simply without authority . . . to grant post-majority support for a disabled adult child.

(Emphasis added.)

¶11. We agree with the chancellor that neither a motion for modification nor a motion for contempt was a permissible procedure to consider support for an adult child after the child had attained majority. We specifically have held that a child-support-modification proceeding brought by one parent against the other is not a proper proceeding in which to consider post-majority support. In ***Taylor***, we held that "[c]ourts in other jurisdictions have held the custodial parent has no standing to bring an action or seek support for a child after the child attains majority[,]" and found that "[w]e think the same rule applies in this state." ***Taylor***, 478 So. 2d at 313 (citations omitted). After specifically holding that no such right existed, the ***Taylor*** Court continued, without citing authority:

> In our opinion *if* there is a legal duty for a parent to support an adult incapacitated child, the duty runs from the parent to the child; not from one divorced spouse to the other. The action should therefore be maintained by or on behalf of the adult child against the parent from whom support is sought.

***Id.*** The chancellor properly found that Mari Lynn's motion for modification was "procedurally improper with regard to the modification of child support for Rick."

6

¶12.    Although *Taylor* – in dicta, as it was not an issue to be decided – suggested a procedure for an adult child to seek post-majority support, *Taylor* clearly did not establish a substantive right (for, indeed, that is a legislative function) to post-majority support, or cite the existence of such authority under either the common law or our statutes. *Taylor*, 478 So. 2d at 313. Nor did *Taylor* overrule *Wright, et al. v. Coleman*, 137 Miss. 699, 102 So. 774, 776-77 (1925), which provided that:

> Under the common law there is no legal obligation resting upon the adult child to support his needy parent, or upon the parent to support his adult child, but such services between persons occupying such relationships are presumed to be gratuitous and out of a spirit of humanity and affection, and the general rule is that an adult child cannot sue a parent who is a member of his household for support and maintenance in the absence of a contract,[4] express or implied.

*Wright*, 102 So. at 776-77.

¶13.    The chancery court properly found that the common law did not endow our courts with the substantive power to require a parent to support an adult child. "The common law of England has, from the earliest times, left this duty [of parents to support their children] to the natural feelings of the parents, and experience has shown that the confidence has not in general been misplaced." *Rawlings v. Rawlings*, 83 So. 146, 147 (Miss. 1919) (citation omitted). We have explained that, "[a]s a general rule, even in the absence of statute, parents are under a legal as well as a moral duty to support, maintain and care for **minor** children[,] . . . [b]ut at common law, the duty imposed on the parents to support their children ceased

---

[4]The appellants have not proven that such a contract for support and maintenance of Rick exists.

7

when the children reached majority."[5] ***Watkins v. Watkins***, 337 So. 2d 723, 724 (Miss. 1976) (emphasis added) (citations omitted).

¶14.    The chancery court also properly found that statutory law did not endow our courts with the power to require a parent to support an adult child. In ***Watkins***, we found that no Mississippi statute vests chancery courts with jurisdiction "to impose a duty on parents to support adult children." ***Watkins***, 337 So. 2d at 724. We find the same today. In 2002, when the child-support judgment was entered, Mississippi Code Section 93-5-23 provided that

---

[5]The Legislature has created two exceptions to the common law. Post-majority maintenance  is statutorily provided for in Mississippi Code Section 43-31-28. It provides that a county board of supervisors may require certain family members to provide care for a pauper who is unable to work, as follows, in relevant part:

> The father and grandfather, the mother and grandmother, and brothers and sisters, and the descendants of any pauper not able to work, **as the board of supervisors shall direct**, shall, at their own charge, relieve and maintain such pauper; and, in case of refusal, shall forfeit and pay the county the sum of One Hundred Fifty Dollars ($150.00) per month, for each month they may so refuse, to be recovered in the name of the county; and shall be liable to any governmental entity who supplies such poor relative, if abandoned, with necessaries, not exceeding said sum per month . . . .

Miss. Code Ann. § 43-31-28 (Rev. 2004) (emphasis added). We have held that "this statutory liability can only be enforced in the manner provided by statute." ***Wright***, 102 So. at 777.
    Post-majority support also is statutorily provided for in a Department of Human Services paternity case. A putative father who has acknowledged paternity and is responsible for making support payments for a minor child is required to continue making support payments if the child has a disability that continues into adulthood. Miss. Code Ann. § 43-19-33(3) (Rev. 2004) ("in the case of a child who, upon reaching the age of twenty-one (21) years, is mentally or physically incapable of self-support, the putative father shall not be relieved of the duty of support unless said child is a long-term patient in a facility owned or operated by the State of Mississippi.).

8

"[t]he duty of support of a child terminates upon the *emancipation* of the child. The court *may* determine that emancipation has occurred and no other support obligation exists when the child . . . [a]ttains the age of twenty-one (21) years . . . ." Miss. Code Ann. § 93-5-23 (2000) (amended 2006) (emphasis added). Justice King correctly observes that Section 93-5-23 makes the chancellor's determination of emancipation permissive ("[t]he court *may* determine that emancipation has occurred"). However, it does not follow that, in the absence of an emancipation determination in a child-support judgment, the child remains unemancipated beyond the age of majority. This Court has provided that:

> Emancipation, as employed in the law of parent and child, means the freeing of a *child for all the period of its minority* from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it.

*Rennie v. Rennie*, 718 So. 2d 1091, 1093-94 (Miss. 1998) (citations omitted). Obviously, an individual cannot be freed "for all the period of its *minority*" *after* the individual has reached the age of majority and is no longer a minor. Under Mississippi law, a "minor" is "any person, male or female, under twenty-one years of age." Miss. Code Ann. § 1-3-27 (Rev. 2005). In the absence of a determination of emancipation in a child-support judgment, a child is freed for all the period of his minority from the care, custody, control, and service of his parents (*i.e.*, he is emancipated) upon attaining the age of twenty-one, at which time Mississippi statute provides that his minority terminates.[6] Accordingly, the duty imposed by

---

[6]Moreover, the child-support judgment in this case specifically provided for Lon to make payments for the "support and maintenance of the *minor* child." Thus, according to

9

Section 93-5-23 for a parent to support its child does not extend beyond the child's minority, which terminates when the child reaches twenty-one years of age, as provided by our Legislature.

¶15. Thus, neither the common law nor statutory law provides to the courts of this State the authority, under the facts as presented today, to require Lon to support Rick. The power to grant the authority to require parents in Mississippi to support their adult children financially is confided to a separate magistracy: the Legislature. Our courts are without the constitutional power to declare otherwise.[7]

## CONCLUSION

¶16. We conclude that the chancery court properly declined to require Lon to support Rick financially via support payments, by depositing money into a conservatorship, or by making alimony payments to Mari Lynn. Accordingly, we affirm the judgment of the Hinds County Chancery Court.

¶17. **AFFIRMED.**

---

both the definition of "emancipation" and the terms of the child-support judgment at issue, Lon's duty to make support payments for Rick terminated when Rick reached the age of majority.

[7]Article 1, Section 1 of the Mississippi Constitution provides that:

The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.

Miss. Const. art. 1, § 1.

10

**WALLER, C.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. PIERCE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., RANDOLPH, P.J., LAMAR AND COLEMAN, JJ. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.**

**PIERCE, JUSTICE, SPECIALLY CONCURRING:**

¶18.   Although I believe the dissent's heart is in the right place, the Legislature has not created a statutory scheme whereby parents may be required to pay support for, or on the behalf of, adult disabled children.  Nor has the Legislature created a statutory scheme whereby adult children may be required to pay for, or on behalf of, disabled parents.  For this Court to hold otherwise is to violate the separation of powers.

**WALLER, C.J., RANDOLPH, P.J., LAMAR AND COLEMAN, JJ., JOIN THIS OPINION.**

**KING, JUSTICE, DISSENTING:**

¶19.   The majority concludes that neither the common law nor statutory law provides to the courts of this State the authority to require a parent to support an adult child.  Maj. Op. ¶13-14.  Because I believe that the Legislature has provided the chancery courts the authority to order a parent to support an adult disabled child, I respectfully disagree.

¶20.   In this case, both parties admit that Rick suffered from serious ailments prior to their divorce.[8]  Mari Lynn argues that the medical conditions have escalated, while Lon argues that

[8]Presiding Justice Randolph's majority emphasizes that the underlying child support judgment (the property settlement agreement entered into by the parties) in this case provides for the maintenance and support of the *minor* child.  While I disagree that this case turns on a reading of the underlying child-support judgment, I must point out that the majority misreads the property settlement agreement.  The property settlement agreement is a

11

they have remained the same since before the parties' divorce. Regardless, it is clear that Rick has suffered from serious medical conditions since his minority. In denying Mari Lynn's requests for support of Rick into adulthood, the chancery court stated that "it is without statutory authority or jurisdiction to entertain the consideration of continued support for an adult disabled child. It is the Court's sincere hope that the Mississippi Supreme Court will address this specific issue and give direction to the chancery courts of this state. It is also the Court's sincere hope that the Mississippi Legislature will address this matter. Until such time, however, this Court is simply without authority or jurisdiction to grant post-majority support for a disabled adult child." With appreciation for the difficult position of the chancery court, I disagree, and find that statutory authority does exist granting our courts the power to require a parent to support an adult child.[9]

---

contract. Courts look to the "four corners" of a contract in order to ascertain its meaning. ***Harrison County Commercial Lot, LLC v. H Gordon Myrick, Inc.***, 107 So. 3d 943, 959 (Miss. 2013). On its first page, the property settlement agreement specifically defines "minor child" as Rick, who was indeed a minor at the time of the agreement. The agreement specifies elsewhere that certain provisions, such as custody, affect the "minor child" "during his minority." Such a statement would be superfluous if "minor" modified "child." Because the property settlement agreement specifically defines the "minor child" as Rick, who was a minor at the time, and not, as the majority asserts, as Rick only while he is a minor, this emphasis on the term the "minor child" clearly misinterprets the agreement and its explicit definition of the "minor child." Thus, the child support judgment applied to "the support and maintenance" of Rick, making a post-majority child support determination appropriate.

[9]The majority of states impose a duty of support on parents of adult disabled children, particularly when the child was disabled during his or her minority. Some states impose such a duty via statute, with some of the statutes merely codifying earlier court decisions or common law to impose a duty of support for adult disabled children. *See, e.g.*, Ariz. Rev. Stat. Ann. § 25-320(E); Ark. Code Ann. § 9-12-312(a)(5)(B); Cal. Fam. Code § 3910(a); Colo. Rev. Stat. Ann. § 14-10-115(B)(a)(II); Fla. Stat. Ann. § 743.07(2); Haw. Rev. Stat.

¶21. Mississippi law provides that "[t]he duty of support of a child terminates upon the emancipation of the child." Miss. Code Ann. § 93-5-23 (Rev. 2004); Miss. Code Ann. § 93-11-65(8) (Rev. 2004). The majority cites *Watkins* for the proposition that no statute vests chancery courts with jurisdiction "to impose a duty on parents to support adult children."

Ann. § 580-47(a); 750 Ill. Comp. Stat. Ann. 5/513(a)(1); Ind. Code Ann. § 31-16-6-6(a)(2); Iowa Code Ann. § 252A.3(3); Ky. Rev. Stat. Ann. § 405.020(2); Minn. Stat. Ann. § 518A.26(Subd. 5); Mo. Ann. Stat. § 452.340(4); Nev. Rev. Stat. Ann. § 125B.110; N.H. Rev. Stat. Ann. § 461-A:14(IV) & (XVI); N.J. Stat. Ann. § 2A:34-23(a); N.D. Cent. Code § 14-09-08.2(6); Ohio Rev. Code Ann. § 3119.86(A)(1); Okla. Stat. Ann. tit. 43 § 112.1A; 23 Pa. Cons. Stat. Ann. § 4321(3); R.I. Gen. Laws § 15-5-16.2; S.C. Code Ann. § 63-3-530(A)(17) (granting court jurisdiction over cases regarding support of adult disabled child, but not creating such a duty); Tenn. Code Ann. § 36-5-101(k); Tex. Fam. Code Ann. § 154.066(a)(4); Va. Code Ann. § 20-124.2(C); Wyo. Stat. Ann. § 14-2-204(a)(I). In the absence of a statute, many courts impose such a duty. *See, e.g.*, *Ex Parte Brewington*, 445 So. 2d 294 (Ala. 1983) (interpreting "children" in the child support statute to mean "dependent" children, not "minor" children, thus including children whose dependency results "from physical and/or mental disabilities that continue to render them incapable of self-support beyond majority"); *Streb v. Streb*, 774 P. 2d 798 (Alaska 1989) ("the presumption of emancipation may be overcome by evidence that an adult child is incapable of supporting himself or herself by reason of a physical or mental disability"); *Nelson v. Nelson*, 548 A.2d 109 (D.C. 1988); *Sininger v. Sininger*, 479 A.2d 1354 (Md. 1984); *Feinberg v. Diamant*, 389 N.E.2d 998 (Mass. 1979); *Maberry v. Maberry*, 598 P.2d 1115 (Mont. 1979); *Cohn v. Cohn*, 934 P.2d 279 (N.M. App. 1996); *Riggs v. Riggs*, 578 S.E.2d 3 (S.C. 2003) (interpreting statute granting court jurisdiction over cases of support of an adult disabled child and finding that "[w]here . . . disability prevents the child from becoming emancipated, the presumption of emancipation upon reaching majority is inapplicable"); *Dehm v. Dehm*, 545 P.2d 525 (Utah 1976) (defining "children" to include incapacitated children and noting the highly equitable nature of divorce proceedings); *Casdorph v. Casdorph*, 460 S.E.2d 736 (W. Va. 1995). *See also* M.C. Dransfield, Annotation, *Parent's Obligation to Support Adult Child*, 1 A.L.R.2d 910 (1948 & Supp.); Noralyn O. Harlow, Annotation, *Postmajority Disability as Reviving Parental Duty to Support Child*, 48 A.L.R.4th 919 (1986).

13

Maj. Op. ¶14; *Watkins v. Watkins*, 337 So. 2d 723, 724 (Miss. 1976).[10] With all due respect to the majority, the statutory scheme regarding child support has undergone significant changes since 1976, when this Court decided *Watkins*.[11] In 1976, neither Section 93-5-23 nor Section 93-11-65 contained any provisions mandating when the duty of support terminated. Laws 1954, Ch. 228, §1; Laws 1960, Ch. 268, §1. In fact, the Legislature did not explicitly provide for when the duty of support terminated until 1996, when it provided that the duty terminates upon the child's emancipation. Laws 1996, Ch. 345, §1. Thus, the decision turns on the definition of "emancipation of the child."

---

[10]This statement is arguably dicta. The Court in *Watkins* ultimately determined that "the contempt proceeding was not an appropriate suit in which to determine whether Roy Watkins was retarded, and whether his father was liable for his support if he was. It is, therefore, inappropriate for the Court to express any opinion on the question of whether a parent has a duty to support an adult retarded child." *Watkins*, 337 So. 2d at 724-25; *see also Taylor v. Taylor*, 478 So. 2d 310, 312 (Miss. 1985) ("[S]ome members of the bench and bar have relied on [*Watkins*] for the proposition that a parent has no legal duty to support an adult retarded child beyond the age of majority. This is a misconstruction. The *Watkins* case never reached the question, but merely held a contempt proceeding was an inappropriate suit in which to do so.").

[11]The majority also cites *Watkins* for the proposition that the common law does not provide for this Court to recognize a duty to support an adult disabled child. This notion has also been discredited. While it is generally recognized that the English common law did not recognize such a duty, many courts have determined that the common law has evolved and found a duty to support an adult disabled child. *See, e.g.*, *Nelson v. Nelson*, 548 A.2d 109, 114 (D.C. Ct. App. 1988) ("As we believe this opinion demonstrates, *Watkins* is contrary to the great body of authority recognizing the existence of such a parental duty to support[.]"); *Holleyman v. Holleyman*, 78 P.3d 921, 936 (Okla. 2003) ("Although the early common law did not extend to one's *parental duty of support* beyond a child's minority, the great majority of American jurisdictions, in which the statutory law is silent, has recognized an exception where, as here, the child is unable to care for itself upon attaining majority. This view is rested on common-law developments."(emphasis in original)).

14

¶22. The Legislature provided that a "court *may* determine that emancipation has occurred pursuant to Section 93-11-65." Miss. Code Ann. § 93-5-23 (Rev. 2004) (emphasis added). This determination of emancipation is clearly permissive, and not mandatory. *See **Burt v. Burt***, 841 So. 2d 108, 111-12 (Miss. 2001) ("The statutory requirements for emancipation [under the prior version of Section 93-5-23] are clearly permissive and not mandatory; the court *may* determine that the child has been emancipated if any of the four factors are satisfied." (emphasis in original)).[12] Thus, the Legislature clearly gave the courts the *option* to use Section 93-11-65 as guidance to determine emancipation in a divorce case, but did not mandate a finding of emancipation under any particular circumstances.[13] Rather, the statute

_____

[12]At the time of the divorce, and the time that ***Burt*** was decided, the statute provided that the duty of child support "terminates upon the emancipation of the child. The court *may* determine that emancipation has occurred and no other support obligation exists when the child" reaches the age of twenty-one, marries, discontinues full-time schooling and obtains full-time employment, or voluntarily moves away from home and establishes independent living arrangements and obtains full-time employment. 2000 Miss. Laws Ch. 453 (emphasis added).

[13]The case at hand was decided under Section 93-5-23 governing divorce cases, which clearly states that a chancellor *may*, but is not required, to determine emancipation based upon Section 93-11-65. Further, at the time of the divorce, the statute merely stated that the chancellor *may* determine emancipation under certain circumstances, including the attainment of the age of twenty-one.

Child support judgments are generally entered when children are at a young age. According to the majority, a child support judgment entered for a three-year-old child must provide for emancipation in that child support judgment in order for emancipation to be prevented at age twenty-one. Maj. Op. ¶14. Clearly, that is an impossible determination to make in most circumstances. In order to give effect to Section 93-5-23, a chancellor could only make a determination that the presumption of emancipation was overcome if the child was near in age to the age of majority such that the determination was made on the child's condition as an adult or near adulthood. The time at which to make that determination would be in a motion to modify the original child support judgment when the child is of an age to

explicitly gives the courts the authority to determine when emancipation occurs with regard

to child support ordered pursuant to a divorce proceeding.

¶23.    Section 93-11-65 provides that

> *[u]nless otherwise provided for in the underlying child support judgment*,
> emancipation shall occur when the child:
>         (i) Attains the age of twenty-one (21) years, or
>         (ii) Marries, or
>         (iii) Joins the military and serves on a full-time basis, or
>         (iv) Is convicted of a felony and is sentenced to incarceration of two (2)
>         or more years for committing such felony[.]

Miss. Code Ann. § 93-11-65(8)(a) (Rev. 2004) (emphasis added). While emancipation under

Section 93-11-65, which is not at issue in this case, "shall" occur when one or more of the

four factors is met, this section also provides that emancipation occurs *unless* the court

provides otherwise in the underlying child support judgment. This provision clearly gives

courts the latitude to make provisions regarding emancipation in their child support

judgments other than those situations outlined in the statute.

---

make a proper determination as to whether the presumption of emancipation at the age of majority has been overcome, and, if proper, substitute it with a modified child support judgment.

However, in light of today's opinion finding that emancipation must occur at age twenty-one unless the chancellor otherwise provides in the child support order, Majority Opinion ¶14, I would encourage all chancellors to include in the original child support order in all divorce cases henceforth a provision delaying the determination of emancipation. This will allow chancellors to later consider child support in the event the child is disabled prior to attaining the age of twenty-one.

¶24.    Thus, under both Section 93-5-23, at issue here, and Section 93-11-65, the duty of support ends with emancipation of the child.  The plain language of both Sections gives the courts latitude to determine under what circumstances emancipation occurs.[14]

¶25.    This Court has defined emancipation as

> the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it.

**Burt**, 841 So. 2d at 111 (quoting **Caldwell v. Caldwell**, 579 So. 2d 543, 549 (Miss. 1991)). Twenty-one is generally considered the age of majority and presumptively the age of emancipation.  *See* **Watkins**, 337 So. 2d at 724.  "At that age a person is presumed to possess the physical and mental capabilities to support himself, to establish his own residence, and in general to manage his own affairs."  **Koltay v. Koltay**, 667 P.2d 1374, 1376 (Colo. 1983). However, when a child is under a mental or physical disability which renders the child incapable of self-support,[15] the presumption of emancipation at age twenty-one may be

---

[14]This Court's duty under the Constitution is to apply the law as it is written.  **Falco Lime, Inc. v. Mayor and Aldermen of Vicksburg**, 836 So. 2d 711, 725 (Miss. 2002).  To give any effect at all to the express statutory language that a court *may* determine that emancipation occurred at age twenty-one, one must allow that the court has the power to determine that emancipation does *not* occur at age twenty-one under certain circumstances. The majority and the special concurrence cite separation-of-power concerns, yet they themselves violate the separation of powers by rewriting the statute to mean that emancipation *shall* occur at age twenty-one, no matter what a court determines.  The plain language of Section 93-5-23 belies such an interpretation.

[15]This standard is the same as that provided by Section 43-19-33, which provides that a putative father is not relieved of the duty of support in the case of an adult child who "is mentally or physically incapable of self-support."  Miss. Code Ann. § 43-19-33(3) (Rev.

17

overcome.[16]  ***Streb v. Streb***, 774 P.2d 798, 800 (Alaska 1989); ***Riggs v. Riggs***, 578 S.E.2d

3, 5 (S.C. 2003).  "A different interpretation would be wholly inconsistent with the

independence that the word 'emancipation' connotes." ***Koltay***, 667 P.2d at 1376.  A child

who is so mentally or physically disabled as to render him incapable of self-support, and who

is thus dependent on one or both of his parents, clearly is not free from the "care, custody,

control, and service" of his parents.  Furthermore, in such a situation, parental control has not

been relinquished.    Thus, because I believe that the plain language of the statutes grant the

courts the latitude to determine when emancipation occurs, and because emancipation does

not occur when, upon attaining the age of majority, a child labors under a mental or physical

---

2009).  The majority takes note that the Legislature did provide a duty of support to adult
disabled children in cases of illegitimate children in which the Mississippi Department of
Human Services Child Support Unit is involved.  Maj. Op. n.5.  While the parties do not
brief this particular issue, thus I decline to go into detail regarding it, I note that the Equal
Protection implications of the majority's decision are troubling.  Under the majority,
Mississippi will mandate a duty to support illegitimate adult disabled children, but not
legitimate ones, or ones whose fathers otherwise recognize and support them.  Such a
distinction appears to be problematic under the Equal Protection Clause, as I see no rational
basis for treating these classes differently.  *See* ***City of Cleburne v. Cleburne Living Ctr.***,
473 U.S. 432, 441, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (classifications based on
legitimacy receive a level of heightened scrutiny); ***Mathews v. Lucas***, 427 U.S. 495, 504,
96 S. Ct. 2755, 49 L. Ed. 2d 651 (1976).

[16]The majority's contention that children are emancipated by operation of law at the
age of twenty-one is inconsistent with the fact that the age of twenty-one creates only a
*presumption* of emancipation, and that presumption is subject to being rebutted by the facts
of a specific case.  The chancellor may consider the facts of this particular case to determine
if Rick was ever emancipated, or whether such a presumption has been rebutted.

18

disability rendering him or her incapable of self-support,[17] I respectfully dissent.  I would reverse the chancery court and remand the case for a determination of 1) whether Rick labors under a mental and/or physical disability that renders him incapable of self-support, and thus whether Rick was ever "emancipated," and 2) if the court determines that Rick overcomes the presumption of emancipation at age twenty-one and has never been emancipated, whether support is appropriate in this case.  If the chancery court reaches the second question, it would be appropriate for the court to consider to what extent Rick receives or is capable of earning his own income, whether it be through government assistance or any work Rick is able to perform.

**DICKINSON, P.J., KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**

---

[17]The statutes are clear that the duty of support terminates upon emancipation.  Thus, I believe that a child who becomes disabled *after* emancipation, by attaining the age of majority or otherwise, does not have a right to parental support under Sections 93-5-23 and 93-11-65.  Once liability is terminated, it cannot be restored.  ***Kruvant v. Kruvant***, 241 A.2d 259, 266 (N.J. Super. Ct. App. Div. 1968).  However, if the disability occurs before emancipation and renders the child unable to be emancipated, such a duty continues so long as the child remains unemancipated.